(March 11, 1914.)

## NORTH ROBINSON DEAN COMPANY, Respondent, v. ELISHA STRONG et al., Appellants.

[139 Pac. 847.]

CONTRACT—SALE—GOOD FAITH—VALIDITY OF SALE—SUFFICIENCY OF THE COMPLAINT—TENDER—DEMAND FOR ACCOUNT OR RETURN OF HORSES ON OR AFTER JULY 1, 1912—SALE FOR PURCHASE PRICE—RATIFICATION OF SALE—AGENCY.

1. Where an agreement is entered into between the N. R. D. Co. and H., and an action is brought upon the same whereby the respondent seeks to recover the value of the horses sold to defendants, who were purchasers in good faith without any knowledge of the contract between the company and H., the action by respondent makes the sale to H. absolute and the title in the defendants absolute.

2. *Held,* in this case, that the complaint states a cause of action and the trial court did not err in overruling the demurrer to the complaint.

3. *Held,* that the plaintiff did not pay or tender payment of the freight charges or feed bill on the horses paid by defendants, and the evidence shows that the defendants paid these charges which were a lien upon the horses, and that the plaintiff never paid the same or tendered payment thereof to the defendants at Ontario, Oregon, or at any other time or place before this suit was brought.

4. *Held,* that the complaint does not allege that the plaintiff made a demand on Hurd to pay or account for or return the horses on or after the 1st day of July, 1912.

5. *Held,* that the present action is not an action to set aside the sale by Hurd to the defendants, but an action for the purchase price, which ratifies the sale by plaintiff to Hurd and the sale by Hurd to the defendants.

6. *Held,* that there is no indication in the alleged agreement of an agency, but the record shows that Hurd did not sell the horses to defendants as an agent. He signed the bill of sale as "Hurd." The plaintiff shipped the horses to Hurd personally.

APPEAL from the District Court of the Fifth Judicial District for Bear Lake County. Hon. Alfred Budge, Judge.

An action to recover for the purchase price of personal property. Judgment set aside.

T. L. Glenn and John A. Bagley, for Appellants.

The plaintiffs did not show facts that entitle them to maintain this action against the defendants. Their only remedy, if any, is against Hurd. This is an action for the purchase price. By bringing this action the plaintiffs make the sale to Hurd absolute and the title in the defendants absolute. (*Bailey v. Hervey,* 135 Mass. 172; *Butler v. Hildreth,* 5 Met. (Mass.) 49; *Peasley v. Noble,* 17 Ida. 686, 134 Am. St. 270, 107 Pac. 402, 27 L. R. A., N. S., 216; *Pease v. Teller Corp.,* 22 Ida. 807, 128 Pac. 981.)

After the sale by Hurd to the defendants the plaintiffs must look to Hurd alone. (*New Haven Wire Co. Cases* (*Baring v. Galpin*), 57 Conn. 352, 8 Atl. 266, 5 L. R. A. 300; *Bent v. Jerkins,* 112 Ala. 485, 20 So. 655; *Wilder Co. v. Wilson,* 16 Lea (Tenn.), 584.)

A. B. Gough, for Respondent.

"If the goods are sold to a retail dealer for the purpose of a resale, or consent to a resale in the ordinary course of trade is given, a *bona fide* purchaser acquires a good title; but the purchaser of a whole stock of goods does not stand on the footing of a *bona fide* purchaser; nor does the fact that the buyer is a dealer in such goods give his subpurchaser the rights of a *bona fide* purchaser if the right of resale is expressly restricted." (35 Cyc. 680, 681.)

When five ranchers, who are not in the market for such livestock, go in together and purchase four stallions they

have never seen, in payment of an indebtedness to them in more than double the amount they consider the stallions are worth, it cannot consistently be urged that they are *bona fide* purchasers. These stallions were wrongfully detained from respondents by the appellants, so the action is properly brought. (Sec. 4054 (3), Rev. Codes; *Lowe v. Ozmun,* 137 Cal. 257, 70 Pac. 87.)

STEWART, J.—The complaint in this case alleges that the plaintiff is a corporation organized and existing under the laws of the state of Nebraska and doing a business of importing, raising, buying and selling stallions and other horses, with its principal place of business at Grand Island, Nebraska; that at the time mentioned in this complaint the plaintiff was, and still is, the owner of four certain stallions described as follows: The Percheron stallion Lacon, 80,951, of the value of $400; the Percheron stallion Colin, 71,411, of the value of $600; the Percheron stallion Bertini, 71,405, of the value of $600; and the Belgian stallion Bristol de Borsleke, 4408 (43,254) of the value of $750; which four stallions were in the possession of C. H. Hurd at Ontario, Oregon, under and by virtue of a contract with plaintiff, by the terms of which said stallions remained the property of plaintiff until fully paid for by said Hurd, and if not paid for by July 1st, 1912, were to be returned and delivered to plaintiff; a copy of the contract is made a part of the complaint.

It is further alleged that on or about the 20th of April, 1912, at Ontario, Oregon, the defendants wrongfully came into the possession of said four stallions under and by virtue of an attempted chattel mortgage from Hurd to defendants, a copy of which chattel mortgage is made a part of the complaint. It is also alleged that before the commencement of this action, on the 1st day of July, 1912, the time expired on which the said C. H. Hurd was to remit and account for or return to plaintiff the four stallions, and that he has not remitted therefor or returned same to plaintiff as provided for in the contract, and thereupon the plaintiff became entitled to the immediate and exclusive possession of the four stallions;

that the defendants still wrongfully hold and possess said stallions; that on the 2d of July, 1912, plaintiff demanded possession of said stallions from defendants, and that notwithstanding such demand defendants still unlawfully withhold and detain said stallions and chattels from the possession of plaintiff to its damage, in the sum of $2,300; wherefore judgment is demanded against defendants in the sum of $2,300 and for costs.

The contract attached to the complaint was executed by plaintiff as first party and C. H. Hurd as second party, and provides that the second party has received from the first party the four stallions heretofore described. The contract provides:

"The above described animals are delivered to and accepted by the second party, to be paid for and accounted for by him to the first party, at the net prices above stated, as fast as disposed of by the second party, he agreeing that he will pay to the first party at Grand Island, Nebraska, for each and every one of said animals the said net prices, as fast as and when any of them are sold or disposed of by him, and that on or before the first day of July, 1912, he will either pay, remit or account to said first party, the said full amounts for each and every one of said animals, at the prices stated, or return same on said last-named date to the first party at Grand Island, Nebraska, in as good condition as when received, all charges, expenses, freight and other outlays connected with the handling, care, keep and protection of said animals to be borne by the second party, the net prices to be paid to the first party on the schedule above stated.

"It is further agreed that as fast as said second party sells or disposes of said animals, he will within two days thereafter, remit and pay to the first party at Grand Island, Nebraska, the above net prices thereof.

"The title to said property and animals, and all monies received therefor, up to the net prices above stated, shall at all times remain in the first party, until fully accounted for and paid to the first party at Grand Island, Nebraska. Second party to keep first party advised at all times as to the

location and condition of said animals, the number on hand, such reports to be made in writing every 10 days. Said animals to be handled wholly at the risk of second party, who shall pay first party for any loss, damage or injury occasioned by death or otherwise. In case second party shall fail to remit for any of said animals of this contract, first party can at his option terminate same and take possession of said animals at any place found. Second party in such case to pay all expenses incurred thereby and freight thereon to Grand Island, Nebraska, and account and pay for all animals not recovered at said time."

The contract is dated April 11, 1912, and signed by the plaintiff company as the first party, and C. H. Hurd as second party.

There is also included in the record, as plaintiff's exhibit "B," the following bill of sale:

"Whereas, I, Charles H. Hurd, of Grand Island, Nebraska, am justly indebted to Elisha Strong on two notes, one for $365.00 and one for five hundred and thirty-six dollars, also the said Strong and one George Alley in the sum of twelve hundred and fifty-five dollars, and to Jacob Jones, Hyrum Smith and Sidney W. Kent in the sum of six hundred and thirty-nine dollars, all of my said creditors being residents of Bear Lake County, Idaho.

"Now in order to pay each of my said debts in full, including interest, freights, livery bills, and traveling expenses of said parties, in the handling of the hereafter described property including charges for livery bills and freight now due on said property at Ontario, Oregon, I hereby sell, transfer and set over to the sole use and benefit of said parties the following described stallions, to wit:

"One Chestnut Sorrel Horse Stallion, coming six years old, the same being a Belgian, register No. ———; light mane and stripe in face; one Gray Stallion, three years old; Percheron register No. ———; one black stallion coming three years old, register No. ———; two white hind feet; Percheron; one steel gray Percheron Stallion, coming two years old, register No. ———.

"All of which horses are now at Ontario, Oregon, and which the said parties or either of them, may take immediate possession, paying the livery bills now due on same and freight which may have been paid on same by me or by any one for or on my behalf.

"That said parties are hereby authorized to dispose of same at best prices obtainable, and without notice of any kind, and after deducting all of said debts and interest, freight and other charges from the proceeds of such sales, shall pay the residue to me or my order.

"Witness my hand this 20th day of April, 1912.

"(Signed) C. H. HURD.

"Witness: ORION T. GLENN.

"It is hereby agreed by and between C. H. Hurd in person, and within named parties, that the said Hurd is to assist in the sale of said horses until sufficient has been sold to cover said indebtedness, at which time if any horses remain unsold they shall be turned to said Hurd for his sole use and benefit, to have and dispose of as he may see proper.

"Dated this 23rd day of April, 1912.

"(Signed) C. H. HURD.

"T. L. GLENN,

"Atty. for Jacob Jones, E. Strong and others."

A demurrer was filed to the complaint, the grounds of which are:

"1. That the complaint does not state facts sufficient to constitute a cause of action.

"2. The complaint is insufficient to entitle the plaintiff to recover for the reasons:

"(A) The complaint shows that C. H. Hurd was the owner of said horses and had the authority to sell, dispose of, deliver and receive pay for them.

"(B) The complaint shows that said Hurd did sell, dispose of and deliver said horses to the defendants and received his pay for them before the 1st of July, 1912, the time stated in the alleged contract between the plaintiffs and said Hurd, when Hurd was to account to plaintiff for the horses or their stipulated value.

"(C) The complaint shows that the defendants came into possession of said horses legally and lawfully and that their possession of said horses is now lawful and legal.

"(D) The complaint does not show that the plaintiff has a right to recover anything in this action."

The trial judge overruled the demurrer. An answer was filed by defendants, wherein the admissions and denials are substantially as follows: Defendants not having sufficient information to enable them to answer allegations of paragraph one of plaintiff's complaint, deny that the plaintiff is a corporation existing under said or any laws of said or any state for said or any purpose or at all; deny that the plaintiff was or is the owner of said stallions or either of them, and admit that said stallions were in the possession of C. H. Hurd at Ontario, Oregon, but deny that by the terms of said contract they remained the property of plaintiff until paid for; deny that by the terms of said contract said stallions, or either of them, if not paid for by the 1st day of July, 1912, were to be delivered and returned to the plaintiff; admit that on the 20th day of April, 1912, the defendants received said stallions at Ontario, Oregon, but deny that their possession was or is wrongful; deny that they came into possession of said stallions or either of them by reason of a chattel mortgage, but allege the fact to be that the said C. H. Hurd for some years had been engaged in the business of shipping stallions from the east and selling them in this and other western states; that while so engaged he became involved in lawsuits in Bear Lake county, Idaho, and desired to furnish certain bonds; that the defendants at said Hurd's request signed several bonds on his behalf; that Hurd lost his cases in the supreme court of Idaho, and the defendants were required to pay the aggregate sum of $2,805 for Hurd; that about the 20th day of April, 1912, Hurd was in Montpelier, Bear Lake county, Idaho, and represented to the defendants that he was the owner of four stallions which were then at Ontario, Oregon; that he was owing the freight charges on them from Grand Island, Nebraska, to Ontario, Oregon, and a feed bill on them at Ontario; that said freight charges and feed bill were a lien

on the horses which were being held for the same; that Hurd
then offered to sell said stallions for the sum of $2,805, to-
gether with the interest due thereon, if the defendants would
pay said freight charges and feed bill and receive the horses
at Ontario; that the defendants accepted said offer and pur-
chased the stallions for $2,805, together with the interest due
thereon, and sent a man to Ontario, and paid the freight
charges, amounting to $208.83 and the feed bill due amount-
ing to $52, and received the stallions from Hurd and shipped
them to Montpelier, Idaho, and paid the expenses, freight
charges and feed bill connected therewith amounting to $215
and have fed and cared for said stallions at an expense of
$625; that defendants have been in possession of the stallions
ever since they received possession of them at Ontario; that
all of said freight charges, feed bills and expenses incurred
in the care and keeping of said stallions is a lien on them and
the same or any part thereof has not been paid or tendered
to the defendants; that said amounts or any part thereof was
not paid or tendered to the defendants before the commence-
ment of this action; deny that the plaintiffs became or were
or are entitled to the possession of said stallions, or either
of them; not having sufficient information to answer the other
allegations of paragraph four of the complaint, deny that
said Hurd was to return the stallions, or either of them, or
pay for them, or either of them, on or before the 1st day of
July, 1912, or at any other time; deny that Hurd failed to
remit to plaintiffs for said stallions as alleged or otherwise;
admit that said Hurd did not return said stallions or either
of them to plaintiff for the reason that he sold and delivered
them all to the defendants; admit the possession of the stal-
lions, but deny that their possession is wrongful; admit that
on the 2d day of July, 1912, North made demand for the
possession of said horses and that the defendants refused to
deliver him the possession thereof, but deny that plaintiff has
been damaged in said sum or any amount in said or any
manner, or otherwise or at all, and in this particular and in
regard to the said demand the defendants allege that on the
8th day of May, 1912, North, one of the plaintiffs, came to

Montpelier and demanded of the defendants the possession of said stallions.   The defendants explained to him they had purchased them from Hurd and what they had paid for them and the amount of freight charges, feed bill and other expenses that had been paid, and required North to show them any contract between the plaintiff and Hurd, but North absolutely refused to show them anything, and stated that he would not show them any papers or anything except in open court.   The defendants informed North that they had bought the horses in good faith and paid for them, and that he should look to Hurd.   This he said he would not do; he was going to have the horses and he would not show the defendants by what authority he claimed he was entitled to them.   Defendants asked North if Hurd did not bring the stallions from Grand Island, Nebraska, to Oregon for the purpose of selling them, with full authority to sell and deliver and transfer title to them and receive the pay for them, and North replied that he did, whereupon the defendants again told North that they bought the horses from Hurd and would not deliver them to North.   The defendants further allege that the said alleged agreement between plaintiffs and Hurd is not a conditional sale, but an absolute sale, and that to construe it to be a conditional sale would be unconscionable and would contravene public policy, thereby making it illegal, null and void; that the plaintiffs cannot maintain this action against the defendants or either of them for the alleged value of the stallions, plaintiff's only remedy being to pursue the property, if he had any remedy at all.   The prayer of the answer is that the action be dismissed, and for costs.

Evidence was offered upon the issues as above stated, and the jury found a verdict in favor of the plaintiff for damages in the sum of $2,300, and the trial judge entered a judgment in favor of plaintiff for the sum of $2,300, and costs and disbursements in the action, taxed at $———.

Notice was given to plaintiff and its attorneys that the defendants intended to move the court to set aside the verdict of the jury and vacate the judgment rendered in favor of plaintiff against the defendants on the 30th day of October,

1912, assigning the grounds.   On the 27th day of December, 1912, the appellants gave notice to the plaintiff and the clerk of the court and the attorneys for plaintiff that the defendants appeal to the supreme court from the judgment entered on the 30th day of October, 1912, in favor of plaintiff against defendants for the sum of $2,300 and costs.   This appeal was perfected and the defendants made a motion to vacate and set aside the judgment entered in favor of the plaintiff on the 30th day of October, 1912, and to grant the defendants a new trial in the cause upon several grounds, which cover five pages of the transcript, which we will not here recite, but will discuss later.

There is also in the record a memorandum of decision of Judge Budge, dated July 25, 1913, and filed on the same date.   This decision of Judge Budge has no place in this record and does not bind this court in any way or control our consideration of the case, and it no doubt was his opinion addressed to the attorneys after the conclusion of the trial in the district court and the filing and recording of the verdict of the jury and the judgment of the trial court, which was dated the 30th day of October, 1912.   The overruling of the motion for a new trial was dated August 26, 1913; this was after Judge Budge had rendered his decision on the 25th of July.

The trial court instructed the jury, stating the issues in the case as they were alleged by the respective parties in the complaint and answer, and in addition thereto gave to the jury instructions Nos. 4, 5, 6 and 7, as follows:

"4. If you find from the evidence that C. H. Hurd had until July 1st, 1912, in which to return the four stallions to the plaintiff, or to pay the plaintiff for them, it would be necessary for the plaintiff to make a demand on Hurd on or after July 1st, 1912, that he return to the plaintiff the four stallions, or pay the plaintiff for them before the plaintiff could maintain an action to recover possession of the stallions or for their value, and if you find from the evidence that no such demand was made by the plaintiff of C. H. Hurd on or after July 1st, 1912, and before this suit was brought, then

you should find for defendants unless you find from the evidence that the defendants wrongfully and unlawfully took possession of the stallions.

"5. The court instructs you, gentlemen of the jury, that if you find from the evidence that the defendants had no right to take said stallions and appropriate them to their own use, then you cannot allow the defendants any amount or amounts whatsoever for freight or livery charges paid by them, or for the keeping of the stallions after they were so taken.

"6. The court instructs you, gentlemen of the jury, that if you believe from the evidence in this case that the contract alleged to have been entered into between the plaintiff and Hurd at Grand Island, Nebraska, was made and entered into in the manner and form as stated in the plaintiff's complaint and that said contract provided that the said Hurd had authority to resell the stallions enumerated therein and that the said Hurd did resell the stallions therein enumerated to the defendants in this action, the court instructs you that your verdict should be for the defendants, unless you find from the evidence in this case that the defendants had actual knowledge that the said Hurd had no title to said stallions.

"7. The court instructs you, gentlemen of the jury, that if you believe from the evidence in this case that the plaintiff and Hurd entered into the contract set out in plaintiff's complaint and admitted in evidence in this case and that the title to the stallions enumerated therein remained in the plaintiff corporation and that the said Hurd entered into the contract with the defendants set out in plaintiff's complaint and admitted in evidence in this case, and if you find from the evidence that the defendants were to take the stallions and to sell the same and out of the proceeds of the sale reimburse themselves for the moneys that had been paid on behalf of the said Hurd and pay the overplus to said Hurd or his order, and that said transaction between Hurd and the defendants was not an absolute sale, but a pledge or chattel mortgage, then and in that event the court instructs you that the title to the stallions in question was still in the plaintiff, and if you further find from the evidence that the defendants

wrongfully converted the said stallions to their own use, your verdict should be for the plaintiff for the value of said stallions.   While on the other hand, if you believe from all the testimony that the transaction entered into between Hurd and the defendants was an absolute sale from Mr. Hurd to the defendants for the amounts enumerated in the defendants' answer and that defendants had no actual knowledge as herein explained, and that the contract between the plaintiff and Hurd provided for a resale, then the court instructs you that your verdict should be for the defendants.''

The court also instructed the jury as to the preponderance of the evidence and that the jury were the sole judges of the facts as testified to by the witnesses, and that they must fairly and impartially consider all the evidence and determine the result to be reached; that the instructions should be considered as a whole.

Certain instructions were requested by the plaintiff in the cause, and refused, except as given as modified.   This applies also to all the instructions presented by the defendants.

The first error assigned upon this appeal is the order overruling the demurrer to the complaint.   We have considered the court's ruling and find that the complaint is sufficient and states a cause of action.

The next contention is that the trial court erred in not granting the motion made by the appellant for a new trial. One of the grounds assigned for the granting of a new trial was newly discovered evidence.   We think the court should have admitted the evidence offered by the appellants which included a letter written by Hurd to Al West, dated April 20, 1912.

The next contention made by appellants is that the evidence is insufficient to justify the verdict.   From an examination of the evidence in this case we are satisfied that the weight of evidence does not show that the plaintiff was the owner of the stallions on the 20th day of July, 1912, the day this suit was brought.

The plaintiff North testified that Hurd was around the barn in Grand Island in April, 1912; had been around there about

six weeks, and wanted to get some horses; that Mr. Wilson of Moulton, Iowa, with whom North was acquainted, came to the barn on April 9th, and North asked him about Hurd. Wilson told North that Hurd had sold horses for them and always settled according to agreement. North says: "I let him [Hurd] have the horses on the recommendation of Lattimore and Wilson of Creston, Iowa."

The alleged agreement between plaintiff and Hurd is dated April 11, 1912. The stallions were loaded at Grand Island April 12th and billed to Hurd at Ontario, Oregon.

This is all the evidence as to ownership. It is contradicted by Hurd. He wrote Al West that the sorrel horse was his and that he would assign the others to him. He told Strong and Jones that he had paid all for the sorrel horse and had the sole and absolute right to sell the others.

We are satisfied that the court is justified in holding that the agreement was an absolute sale to Hurd made on the recommendation of Lattimore and Wilson, and that the horses were billed to Hurd and not to the plaintiff. When the railroad notified North that the horses were held at Ontario for freight charges, he did not pay the freight charges as the owner would have done. When North went to Ontario and Strong told him that the defendants had bought the horses and that he was going to pay the freight charges and feed bill and ship them to Montpelier, he did not say, those are my horses, I will pay these charges and take the horses, as the owner would have done. He did not replevin the horses, if necessary, as the owner would have done.

The evidence, we think, conclusively shows that Hurd was the owner of the horses and sold them all to the defendants and received his pay for them. Hurd owned the sorrel horse and bought the other three on the recommendation of Lattimore and Wilson. He sold them to defendants. The agreement shows that he bought them for the purpose of reselling them, and all the evidence shows that he did sell them to the defendants at Montpelier, Idaho, and went to Oregon and delivered them to defendants. Hurd spent four days with Jones and Strong at Ontario, and went with them to the de-

pot when they paid the freight charges. Then the plaintiff North appeared at Ontario and silently acquiesced in affirming the sale and let the defendants pay the freight charges and feed bill and ship the horses to Montpelier.

The evidence clearly shows that the defendants paid the freight charges and feed bill, which were a lien upon the horses, and that the plaintiff never paid the same or tendered payment thereof to the defendants at Ontario, or at any other time or place before this suit was brought. The evidence shows that the defendants were legally in possession of the stallions purchased, and that the stallions were bought from Hurd who had a right to sell them and took a bill of sale, and that the taking and retaining possession of the horses was not in violation of the law and there was no element of wrongfulness or of tort shown by the evidence, but the evidence does clearly show that Hurd had the right to sell the horses and did sell them to the defendants.

It will be seen from examining the complaint that there is no allegation that the plaintiff made a demand on Hurd to pay or account for or return the horses on or after the 1st day of July, 1912, and North testified that no such demand was made before bringing this action. The agreement states that Hurd was to have until that time. This action is purely an action for the purchase price; the action instituted by plaintiff makes the sale to Hurd absolute and the title in the defendants absolute. (*Bailey v. Hervey,* 135 Mass. 172; *Butler v. Hildreth,* 5 Met. (Mass.) 49; *Peasley v. Noble,* 17 Ida. 686, 134 Am. St. 270, 107 Pac. 402, 27 L. R. A., N. S., 216; *Pease v. Teller Corporation,* 22 Ida. 807, 128 Pac. 981.)

The appellants contend that the giving of instruction No. 4 was error, for the reason that the instruction is not in accord with the law upon the facts of this case, because they contend that Hurd gave them an absolute title to the horses, and that it would be contrary to the law and equity and an injustice to the appellants to construe the transaction between Hurd and the appellants contrary to the intent and purpose of the parties, throughout the transaction, by the respondent and Hurd and Hurd and the appellants in this case

(*Peasley v. Noble*, 17 Ida. 686, 134 Am. St. 270, 107 Pac. 402, 27 L. R. A., N. S., 216), and that the present action is not an action to set aside the sale by Hurd to the defendants, but an action for the purchase price, which ratifies the sale by plaintiff to Hurd and the sale by Hurd to defendants.

After the bill of sale was given to defendants, and Hurd released, he went to Ontario, Oregon, beyond the jurisdiction of the Idaho courts, and delivered the horses to Jones and went with him to the depot to pay the freight charges and also saw that the feed bill was paid and that everything was satisfactory, and left for Iowa, where he lives. If this had not been a *bona fide* sale, Hurd, when he arrived at Ontario where the horses were, could have rescinded the sale or taken some action to recover the horses or their value.

We are satisfied also that there is no indication in the alleged agreement of an agency. Hurd did not sell the horses to defendants as an agent. He signed the bill of sale as "Hurd." The plaintiff shipped the horses to Hurd personally. In the agreement it says, "title to remain in plaintiffs until sold." When North went to Ontario the horses were there, without the jurisdiction of the courts of this state. He did not take the horses as a principal could and would have done. When he was shown the bill of sale to the defendants at Ontario, signed "Hurd," he did not say, our names are not signed to that as principals. When North was advised by the freight officers of the O. S. L. Ry. at Salt Lake City that the horses were held at Ontario for freight charges, he did not pay the freight as a principal would have done. North came to Montpelier and discussed the matter with defendants and found that Hurd had sold the horses to them and got the money for them. This was about the 10th of May, and he went east and found Hurd and demanded the payment for the horses. Hurd told him he would pay for them. He did not arrest Hurd for embezzlement as a principal would have done.

When North was in Montpelier talking with the defendants, they asked him to see any agreement he had with Hurd, and he refused to show them any and defiantly said, "I will

only show it in open court.'' ·When North went to Ontario
and found that Hurd had sold and delivered the horses to
the defendants, he did not terminate the agreement; he let
the defendants pay the feed bills and freight charges and
bring the horses to Montpelier, and the plaintiffs never termi-
nated the agreement; they never made a demand on Hurd
for its fulfilment on or after the 1st day of July, 1912. We
call attention to the case of *Peasley v. Noble, supra.* We
think that after the sale by Hurd to defendants, the respond-
ents should have pursued Hurd alone.

In *New Haven Wire Co. Cases (Baring v. Galpin)*, 57 Conn.
352, 8 Atl. 266, 5. L. R. A. 300, the court says: ''After sale
their security was only the fidelity of the Wire Company to
its agreement to hold the proceeds of their rods apart and
pay them over.'' This doctrine is approved in the following
cases: *Peasley v. Noble, supra; Winchester Wagon Works
and Mfg. Co. v. Carmen,* 109 Ind. 31, 58 Am. Rep. 282, 9
N. E. 707; *Bent v. Jerkins,* 112 Ala. 485, 20 So. 655; *Wilder
Co. v. Wilson,* 16 Lea (Tenn.), 584.

The record ·shows by the bill of sale, dated April 23, 1912,
that the sale of the animals described in this action was made,
and the record shows conclusively that the plaintiff was in-
formed of this sale. The agreement between the respondent
and Hurd was executed and signed on the 11th of April,
1912, just twelve days before the bill of sale was signed by
Hurd, and the respondent made no claim of ownership of the
horses after the sale by Hurd, and took no steps to make claim
under the agreement until they brought the action against
Strong and others, which was commenced on July 20, 1912,
three months after the date of the bill of sale; the cause was
tried on October 29, 1912, and judgment rendered October
30, 1912. It is clearly shown by the record that the respond-
ent made no claim to the title of the property prior to July
20, 1912. ·

We therefore conclude that the evidence is not sufficient to
support the verdict and the judgment based thereon; that the
court erred in entering judgment for the plaintiff and that

the plaintiff is not entitled to any judgment whatever on the evidence.

The judgment must be set aside and it is so ordered and the cause is remanded for further proceedings in accordance with the views herein set forth. Costs of this appeal are awarded to appellants.

Ailshie, C. J., and Sullivan, J., concur.

Petition for rehearing denied.