[Crim. No. 582. Third Appellate District.—February 15, 1922.]

## THE PEOPLE, Respondent, v. RAYMOND PROSSER, etc., Appellant.

[1] CRIMINAL LAW—INSANITY AS DEFENSE—DISCHARGE FROM STATE HOSPITAL — CERTIFICATE AS EVIDENCE. — In a criminal case, in which the only defense is insanity, the defendant is not prejudiced by the admission in evidence of a certificate of discharge from a state hospital for the insane, although he had been paroled and granted leave of absence and the last complete examination of him was made almost a year prior to the date of such discharge, where the superintendent who signed such certificate, before it is admitted in evidence, is permitted, without objection, to testify to the discharge of the defendant and to his signing the certificate, and such certificate is not received as conclusive evidence of the sanity of the defendant but as the opinion of the superintendent that the defendant was sane, the court stating that the weight of it is for the jury to determine.

[2] ID.—CAUSE OF OFFENSE—CRIMINAL TENDENCIES—INTERESTS OF JUSTICE.—Where the record on appeal in such case shows that the offense for which the defendant was convicted and other similar offenses committed by him were the result of his uncontrolled criminal tendencies and not the irresistible product of a disordered brain, the appellate court is required to hold that, if any error was committed by the trial court in the admission of the certificate of discharge, it ought to be disregarded in the interests of justice.

[3] ID.—COMMITMENT TO HOSPITAL AS INSANE—EVIDENCE OF INSANITY — PRESUMPTION — ERRONEOUS INSTRUCTION. — An instruction to the effect that if the defendant was committed to a state hospital as insane, the law presumes that he continues insane until such time as he is lawfully discharged from such hospital or is legally adjudicated insane, is erroneous, in that it proceeds upon the mistaken presumption that such adjudication is conclusive evidence that the defendant was insane, whereas it is only evidence to be weighed by the jury, the effect of which is to be determined by them.

[4] ID. — IMPROPER DISCHARGE — ERRONEOUS ADMISSION OF CERTIFICATE—INSTRUCTIONS.—An instruction "that a discharge or certificate of discharge given by the superintendent of a state asylum or hospital is of no effect is illegal and void, if at the time it was given the person whom it purports to discharge had been paroled and while on parole had escaped and at the time of the purported discharge was not present at the hospital, nor had been there for some months previous, and was purported to be discharged without examination or observation at the time of the purported discharge and for a considerable period of time previous thereto," is proper, but its refusal is not prejudicially erroneous where the certificate was not received as conclusive evidence that the defendant was sane and it is apparent that, if such instruction had been given, the verdict would and should have been the same.

[5] ID.—COMMITMENT TO STATE HOSPITAL—EVIDENCE OF INSANITY—REBUTTAL.—The commitment of a person to a state hospital for the insane is evidence of insanity that can be rebutted by counter-evidence, and even if the jury believe that such person was insane at the time of his commitment, the prosecution is not precluded from showing by evidence other than a regular discharge by the hospital or an adjudication of sanity that he was sane at the time he committed the offense charged against him.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Stanley M. Arndt for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was convicted of "making, drawing, uttering and delivering a check for the payment of money on a bank, without having sufficient funds in or

credit thereat with intent to defraud," and he has appealed from the judgment. The only defense was insanity, and it is not disputed that the evidence upon that issue is abundantly sufficient to support the implied finding of the jury against appellant, but it is contended that the trial court committed prejudicial error in admitting in evidence a certain purported discharge from the hospital for the insane at Stockton and in refusing to give certain proposed instructions in reference to the invalidity of such discharge and the effect of defendant's commitment to the asylum. The defendant was adjudged insane upon two different occasions. The first time was in 1915, when he was committed by the superior court of Alameda County to Agnews, whence he escaped after six or seven months. On September 24, 1919, he was again examined and committed to Agnews by the superior court of San Francisco, and after escaping and being recaptured he was transferred to the Stockton asylum on March 16, 1920. On June 6th, following, he was paroled and leave of absence granted, the parole providing that he "must be returned every thirty days for renewal." The parole was regularly extended to September 6th, but before this date he broke his parole, of which the police and asylum authorities were notified. On February 16, 1921, he was discharged from the hospital as "not insane." Defendant had not been there nor had he been seen by the physicians since June 6, 1920, and the last complete examination that they made of him was on March 20, 1920. On March 24, 1921, the check was passed, upon which the indictment was based.

[1] The court permitted said certificate of discharge to be introduced in evidence, and by appellant it is claimed that this was error under the authority of *Aldrich* v. *Barton*, 153 Cal. 488 [95 Pac. 900]. Therein it is said: "There can be no doubt that the jurisdiction of the superintendent of an insane asylum to discharge a person as recovered from insanity exists, under section 2189 of the Political Code, only where such person is a patient in the asylum. The only authority given to the superintendent by the statute is to discharge a 'patient' and that by such 'patient' is meant one who has been committed to the asylum and has remained there (except in case of a temporary absence as on parole) for care and treatment, is clear from a reading of the entire

chapter of the Political Code dealing with the commitment and care of insane persons." In view of the facts already stated it is the claim of appellant that he was not a patient in the asylum at the time of said discharge and, hence, the superintendent was without jurisdiction to certify that Prosser was sane. But whether appellant was or was not at the time a "patient" as that term is used in said statute, the error, if any, was immaterial, since the superintendent before said certificate was received in evidence had without objection testified as follows: "Q. What did you do? Just tell the facts. A. Well, he was discharged on February 16, 1921, as not insane. Q. You signed a document to that effect? A. Yes, sir, the discharge. Q. Was that signed by you Dr. Clark? A. Yes. . . . Q. Now, that document, People's Exhibit 5, was signed by you, wasn't it? A. Yes, sir. Q. What date was it signed? A. Dated February 16, 1921. Q. What is the name of the document, identify it? A. This is a discharge from the hospital, Mr. Prosser's discharge from the Stockton State Hospital." It is apparent that the formal introduction of the certificate of discharge could add nothing to the force of the preceding testimony. Moreover, the certificate was not received as conclusive evidence of the sanity of appellant but as the opinion of Dr. Clark, the superintendent of the hospital, that Prosser was sane, the court stating that the weight of it was for the jury to determine. If it might be claimed that, in this aspect, it was incompetent, the answer is that it was entirely without prejudice, since Dr. Clark had testified: "On the recommendation of his doctor who had been in touch with him, and with his history taken, I thought the man was not insane, and his diagnosis, when he came before the medical staff for examination, there was no diagnosis of malcondition. He never showed any mental symptoms of insanity. He was at work, in the carpenter shop and around the place shortly after he came. He never showed any signs of insanity. Based on that and his attending physician's opinion, the discharge was made." It may be added that Dr. McLeish, who carefully observed the patient all the time he was in the hospital and made a complete examination on March 20th, testified that appellant was sane, that he never had any hallucinations or delusions. "I would not call him a normal individual but he is not in-

sane; he is a man with criminal tendencies, but that does not mean he is insane.''

[2] Indeed, an examination of the record is convincing that there is no substantial ground for a rational inference that appellant was irresponsible at the time he committed the offense; in other words, that he did not understand the nature of the act and appreciate the fact that he was doing wrong. It is well settled, as stated in *People* v. *Willard,* 150 Cal. 543 [89 Pac. 124], ''that insanity may be available as a defense to a crime charged, it must appear that the defendant, when the act was committed, was so deranged and diseased mentally that he was not conscious of the wrongful nature of the act committed. . . . Although he may be laboring under partial insanity—as, for instance, suffering from some insane delusion or hallucination—still if he understands the nature and character of his action and its consequences . . . such partial insanity or the existence of such delusion or hallucination is not sufficient to relieve him from responsibility for his criminal acts.'' Herein, there was some evidence that the defendant was a ''constitutional inferior,'' that he had certain delusions, that he was indeed a proper subject to be committed to a hospital for the insane, as evidenced by said adjudications, but only one conclusion can be drawn from the whole record, and that is, that he should be held answerable to the penalty of the law for his conduct. The truth is that he had committed many similar offenses and from the record we must conclude that these acts were the result of his uncontrolled criminal tendencies and not the irresistible product of a disordered brain. In view of this conclusion, we should be required to hold that, if any error was committed by the court in such ruling, it ought to be disregarded in the interests of justice.

[3] The court committed no error in refusing to give the following instruction: ''You are instructed that if you find that defendant was committed to a state Hospital in California as insane by the superior court of any county of California that the law presumes that defendant continues insane until such time as he was lawfully discharged from the state Hospital or was legally adjudicated sane.'' This instruction proceeds upon the mistaken assumption that such adjudication is conclusive evidence that the party was

insane; whereas, it was only evidence to be weighed by the
jury, and the effect of which was to be determined by them,
but they were not in anywise concluded by the opinion of
the medical examiners or by the judgment which declared
appellant insane. (*People* v. *Willard*, *supra*.) In the
Willard case the defendant, just a few minutes after he had
been examined and found insane and ordered committed
to the asylum, killed the sheriff of Mendocino County, be-
fore he had left the judge's chambers where the examination
was held, but his conviction for murder of the first degree
was sustained by the supreme court, said commitment being
regarded as merely evidence of insanity to be overcome by
other evidence that he was sane.

[4] Another proposed instruction herein was: "You are
instructed that a discharge or certificate of discharge given
by the superintendent of a state asylum or hospital is of
no effect, is illegal and void, if at the time it was given
the person whom it purports to discharge had been paroled
and while on parole had escaped and at the time of the
purported discharge was not present at the hospital, nor
had been there for some months previous, and was purported
to be discharged without examination or observation at the
time of the purported discharge and for a considerable
period of time previous thereto." We think the instruction
properly characterized said discharge and the instruction
might well have been given. But for reasons already stated
the action of the court was not prejudicial. The purported
discharge was not received as conclusive evidence that the
defendant was sane, and in view of the whole of the testi-
mony of Dr. Clark the jury must have regarded it simply as
his opinion of the mental condition of appellant based upon
his knowledge of the prior history of the case. Besides, if the
instruction had been given, we think the verdict would and
should have been the same.

The only other rejected instruction worthy of notice was
based upon the theory that if the defendant had been com-
mitted as insane to the hospital at Agnews and was after-
ward transferred to the one at Stockton and then paroled
and afterward escaped, and that the only evidence of his
discharge was one purporting to have been made after such
escape and while he was not in the custody "of the said
state hospital or any state hospital for some time previous,

and if there is no evidence of any adjudication by a superior court of the state of California that defendant is sane, then you must find at the time that defendant was alleged to have defrauded George Buthenuth, as alleged in the indictment herein, that he was insane.'' But it is manifest that this instruction is also based upon the erroneous theory that the commitment to the hospital was conclusive evidence that appellant was insane at the time and that his insanity continued until he was regularly discharged by the hospital or adjudicated to be sane. [5] The fact is, as already seen, that it was evidence of insanity that could be rebutted by counter-evidence, and even if the jury believed that he was then insane, the prosecution was not precluded from showing by other evidence than such discharge or adjudication that he was sane at the time he committed the offense charged against him. The instruction was likely also to be construed by the jury as implying that sanity or insanity was the ultimate question to be determined instead of the capacity of the defendant to understand the legal and moral quality of his act in passing said check.

Appellant's counsel deserves commendation for the zeal and ability with which, without compensation, he has represented his client, but we are satisfied that justice has been done in the case and that no prejudicial error has been shown.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.