[Civ. No. 5156. Second Appellate District, Division Two.—June 4, 1928.]

OLIVER FETTERLEY, Respondent, v. HELEN M. RANDALL, Appellant.

Walter J. Little for Appellant.

No appearance for Respondent.

STEPHENS, J., *pro tem.*—The parties to this cause are Oliver Fetterley, plaintiff, cross-defendant and respondent; Helen M. Randall, defendant, cross-defendant and appellant, and First Savings Bank of Vallejo, California, defendant and cross-complainant. On the 13th of March, 1922, and after a proceeding authorized by sections 2168, 2169 and 2170 of the Political Code, viz., a hearing before a superior judge with two physicians present, sometimes referred to as the lunacy commission, respondent was ordered committed to the state hospital for the insane. Before his trial thereon before a court and jury, which he had demanded, respondent made and delivered to appellant a bank draft upon the First Savings Bank of Vallejo, California, for the sum of $500, payment as attorney's fee to appellant. Respondent had contracted for the services of appellant long before the institution of the proceedings above mentioned. This draft appellant cashed. Respondent demands the return of this sum, on the ground that he was legally incapacitated to enter into a contract at the time he employed appellant. Appellant contends that respondent was legally competent to make the contract and to draw the check or draft, and also that even if he were not competent the services were for necessities, and appellant is entitled to the sum mentioned in the draft on the *quantum meruit.* It was stipulated below that such sum is a reasonable payment for the services. The trial judge gave judgment that appellant, in effect, return the $500, on the ground that respondent had been adjudged insane and was insane when he delivered the check to appellant. This appeal is from that judgment.

As to appellant's contention that attorney's fees are necessaries of life, we shall express no opinion, as we shall decide the case upon the other point.

A careful perusal of the complaint fails to reveal any allegation that respondent was insane when he made and delivered the bank draft. The bill of exceptions shows that no evidence whatever was received by the court that re-

spondent was insane. In fact, all such evidence offered, except evidence of the referred to proceeding, was rejected by the court. Notwithstanding this the court found "that said draft was void for the reason that at the time said draft was executed plaintiff was insane and had no capacity to make contracts of any kind or character." The court also found: "That . . . it is true that said plaintiff was adjudged insane at a regular hearing of said [superior] court on the 13th day of March, 1922." It is apparent that the trial court viewed the proceedings of March 13, 1922, as legally determinative of the fact that respondent was insane, and that he was incapable of entering into a contract. Upon this point we are unable to agree with the learned trial judge.

■ The proceeding before the judge, with the advisory assistance of two physicians, under the provisions of section 2168 et seq. of the Political Code, is a summary proceeding for the purpose of determining whether or not the person charged with being insane is in fact in such a mental condition as to justify the state in depriving him of his personal liberty and affording to him, if it is found needed, the benefit of proper care and remedial aid. It is not a conclusive judicial determination of sanity or insanity. In the case of *People* v. *Willard*, 150 Cal. 543 [89 Pac. 124], the defendant was being tried for murder. There was an objection to the introduction of certain documents used in a proceeding similar to the proceeding in the instant case, in which the defendant had been committed to the state hospital for the insane. The court said: "As to the other documents which appellant insists should have been admitted—the affidavit, report of examining physicians, their certificates, etc.—the court was clearly right in rejecting them. The certificates were purely hearsay evidence and were not admissible for any purpose. It is contended by appellant that all these proceedings constituted a judgment roll. There is nothing in this contention. In a proceeding such as in question here, there is no judgment roll, in the sense that it determines conclusively anything. The statute provides for a commission in each county in the state, consisting of at least two physicians and a judge of the superior court of the county, whose duties in the examination of one alleged to be insane are limited and confined to

the specific purpose, viz., to ascertain whether such alleged insane person is a proper subject to be admitted for care and treatment to the insane asylums of the state. This commission is purely a creature of the statute. It is not intended as, and is not, a tribunal in which the status of the alleged insane person is fixed, but simply a commission which determines whether the mental condition of the person it has examined is such as warrants his detention in the asylum for treatment. From these considerations we are satisfied that the ruling of the court, as far as it went, was correct."

In the case of *Kellogg* v. *Cochran*, 87 Cal. 192, 198 [25 Pac. 677, 679], the plaintiff had been committed to the state hospital for insane under a like proceeding. He claimed fraud, and sued for damages for malicious prosecution. Defendant demurred to the complaint, claiming plaintiff had been declared insane and, therefore, was without legal capacity to sue. The demurrer was sustained, but the supreme court ordered the demurrer overruled. We quote from the opinion: "It would seem, therefore, not only that the power to discharge an inmate of the asylum is vested solely in the officers of the asylum, but that such power is to be exercised upon one of only two grounds: 1. That the insane inmate has recovered; and, 2. That he had been improperly committed. I think the effect of a discharge on either ground, if no guardian had been appointed under the act of March 9, 1885 (Pol. Code, p. 342), would be to restore the person discharged to legal capacity to sue. A discharge on the first ground is an adjudication, by competent authority, that the person had recovered from insanity; and a discharge on the second ground, by like authority, overrules or nullifies the order of commitment, and leaves the person committed in the same status, as to capacity to sue, that he was in before he was committed. (Civ. Code, sec. 40.) Besides, I think the order of commitment is not conclusive evidence against the plaintiff in this action of his insanity at any time, or of probable cause for the prosecution of which he complains."

And, again, in *People* v. *Prosser*, 56 Cal. App. 454, at pp. 458, 459 [205 Pac. 869, 871], the court says: "The court committed no error in refusing to give the following instruction: 'You are instructed that if you find that de-

fendant was committed to the state hospital in California as insane by the superior court of any county of California that the law presumes that defendant continues insane until such time as he was lawfully discharged from the state hospital or was legally adjudicated sane.' This instruction proceeds upon the mistaken assumption that such adjudication is conclusive evidence that the party was insane; whereas, it was only evidence to be weighed by the jury, and the effect of which was to be determined by them, but they were not in anywise concluded by the opinion of the medical examiners or by the judgment which declared appellant insane. (*People* v. *Willard, supra*.) In the Willard case the defendant, just a few minutes after he had been examined and found insane and ordered committed to the asylum, killed the sheriff of Mendocino county, before he had left the judge's chambers where the examination was held, but his conviction for murder of the first degree was sustained by the Supreme Court, said commitment being regarded as merely evidence of insanity to be overcome by other evidence that he was sane."

We think the above quotations demonstrate the incorrectness of the court's finding in the instant case "that said plaintiff [respondent here] was adjudged insane at a regular hearing of said court on the 13th day of March, 1922," and that it does not follow as a matter of law that after such proceeding the respondent was incapable of contracting.

We now take up for consideration Finding No. IV, above referred to, which is as follows: "That said draft was void for the reason that at the time said draft was executed plaintiff was insane and had no legal capacity to make contracts of any kind." As heretofore stated, the complaint does not specifically allege that the plaintiff named therein was ever insane. It appears to premise the right to relief upon the commitment heretofore referred to, and we are of the opinion that, under the authorities above quoted from, this finding also stands unsupported by the evidence. For a pertinent discussion of variance between allegation and proof on the exact point here under discussion see *Maionchi* v. *Nicholini*, 1 Cal. App. 690 [82 Pac. 1052]. For the sake of argument and for clarity, however, we shall assume that the question of sanity at the

time the draft was executed was properly raised by the pleadings. This brings us to the question of void and voidable contracts.

Section 38 of the Civil Code reads as follows: "A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family." Section 39 of the Civil Code is as follows: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission as provided in the chapter on rescission of this code." Section 40 of the same code reads, in part: "After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or .waive any right, until his restoration to capacity." The court below treated the proceedings of March 13, 1922, as though they had established respondent's status as defined by sections 38 and 40 of the Civil Code. (See *People* v. *Willard,* and *Maionchi* v. *Nicholini, supra.*)

In order for respondent to recover the sum collected on the draft it would be necessary for him to allege and prove that, when he executed and delivered the draft, he was lacking in understanding and that he did not comprehend the meaning of his acts. (*Ripperdan* v. *Weldy,* 149 Cal. 667 [87 Pac. 276].) "It would seem, therefore, that a person may be insane in the general acceptation of the term, and yet his insanity may be of such a character as not to deprive him entirely of the power of knowing and understanding the nature of ordinary business transactions, and that such form of insanity, or rather unsoundness of mind, will not render a person legally .incapable of entering into a valid contract. (*Motley* v. *Head,* 43 Vt. 633; *Dennett* v. *Dennett,* 44 N. H. 531 [84 Am. Dec. 97]; *San Francisco Credit Clearing House* v. *MacDonald,* 18 Cal. App. 212, 218 [122 Pac. 964].)" The only evidence introduced was the fact of the proceeding before the judge and the two physicians and the judgment therein. It is plain that this evidence did not support the finding under consideration. For an interesting discussion upon the subject matter here

being considered see 14 Cal. Jur. 341, where many authorities are also cited.

The only other evidence offered was not allowed, and, we may say, was properly disallowed, under the view taken by the court, but improperly disallowed if the pleadings had been broad enough to take in evidence of respondent's capacity of understanding. (*People* v. *Harris*, 163 Cal. 53 [145 Pac. 520], and *Estate of Arnold*, 147 Cal. 583 [82 Pac. 252].) No evidence at all was introduced to sustain the allegation that there was fraud or duress. It should also be kept in mind that here there were no proceedings under the guardianship laws under which the the ward would be legally incapacitated to contract.

A general demurrer to the complaint was interposed and overruled. It should have been sustained.

The judgment is reversed.

Craig, Acting P. J., and Thompson, J., concurred.