(No. 6219.   December 14, 1935.)

ROBERT W. FLEMING, Appellant, v. HEBER BITHELL
and ELIZA BITHELL, His Wife, Respondents.

[52 Pac. (2d) 1099.]

J. Wesley Holden, for Appellant.

Kenneth S. Mackenzie, for Respondents.

BUDGE, J.—This action was instituted in the ordinary form to foreclose a mortgage on real estate, the mortgage being executed by Heber Bithell and Eliza Bithell, his wife.

The pertinent facts are without conflict and are as follows: On July 22, 1921, Heber Bithell was committed to the State

Hospital South, an institution at Blackfoot for the care and treatment of those of unsound mind, and was paroled to the care of his wife on October 10, 1921, was returned to said State Hospital South December 14, 1923, remained until February 13, 1924, and was then released, and executed and acknowledged the note and mortgage herein involved May 8, 1928, more than four years elapsing after Heber Bithell was last released until the execution of the note and mortgage. No guardianship proceedings were ever had and no guardian of the person or estate of Heber Bithell was ever appointed. A guardian *ad litem*, however, was appointed immediately after the institution of this action.

To the complaint in foreclosure respondents answered by general denial and separate answer and a further separate answer by Eliza Bithell, the wife. The separate answers tendered the issue of insanity of Heber Bithell, alleging he had been committed to the State Hospital South on July 22, 1921, and had never been restored to sanity or competency as provided by the laws of Idaho, and, ''that said defendant, Heber Bithell, is now, and ever since the 22d day of July, 1921, continuously has been an insane and incompetent person.''

During the trial, which was before the court without a jury, it was stipulated between counsel for all parties that respondents admitted all material allegations of the complaint, respondents reserving the right to plead and prove insanity of Heber Bithell and that because of such insanity the instruments in question are wholly void. It was further stipulated that respondents received $1600, the amount of the loan, and used the same for their own use and benefit.

Appellant's assignments mainly predicate error upon the findings and conclusions of the court to the effect that Heber Bithell was duly adjudicated to be insane and incompetent by the probate court of Bonneville County, July 22, 1921, and that no certificate of discharge had been issued showing him to be cured nor were judicial proceedings ever had restoring him to capacity or sanity, and thus that ever since July 22, 1921, he has been and now is an insane and incompe-

tent person and by reason thereof the note and mortgage are void and of no force or effect.

It is unnecessary to separately consider the assignments inasmuch as they, in the main, question the correctness of the court's findings and conclusions upon the admitted facts, and a determination of this question will dispose of the case here.

The question of void and voidable contracts of idiots and persons of unsound mind is controlled by statute. I. C. A., sec. 31–106, provides:

"A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family."

I. C. A., sec. 31–107, provides:

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission."

I. C. A., sec. 31–108, provides:

"*After his incapacity has been judicially determined,* a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right until his restoration to capacity. But a certificate from the medical superintendent or resident physician of the insane asylum to which such person may have been committed, showing that such person had been discharged therefrom cured and restored to reason, shall establish the presumption of legal capacity in such person from the time of such discharge."

It is apparent that the court below treated the proceedings of July 22, 1921, as having conclusively established respondent Heber Bithell's status as defined by I. C. A., section 31–108, that is, that the proceedings of July 22, 1921, were legally determinative of the fact that Heber Bithell was insane and that he was incapable of contracting. We are not unmindful of the observations of this court as found in *North Robinson Dean Co. v. Strong,* 25 Ida. 721, at 730, 139 Pac. 847, *Corker v. Cowen,* 30 Ida. 213, at 215, 164 Pac. 85, and

*Baldwin v. Singer Sewing Machine Co.*, 48 Ida. 596, at 598, 284 Pac. 1027, wherein it is held, substantially, that written opinions of trial judges constitute no part of the record as such, upon which error may be predicated. However, it is not improper in order to call attention to the theory adopted by the court to refer to the memorandum decision, made prior to the findings, conclusion and decree, which clearly shows that the court concluded that the commitment to the State Hospital South, without a subsequent restoration, either by certificate or judicial proceedings, was and remained a conclusive determination of the incapacity. of Heber Bithell to contract, although, as the court states, his insanity was of a recurring type and at the time the note and mortgage were executed, and at the time of the negotiations between appellant and respondents, culminating in the loan involved, Heber Bithell was on parole, in one of his normal periods, and in such state of mind as to understand the nature and purport of the contract, and able to transact business.

We are constrained to the view that the court did not hold or intend to be understood as holding in the absence of the commitment of Heber Bithell in the preliminary proceedings to which reference has been made, that there was sufficient evidence to warrant a holding that Bithell was so insane and incompetent to contract at the time he executed the note and mortgage in question as to make the instruments absolutely void. While the learned trial judge admitted evidence tending to show knowledge or means of knowledge upon the part of appellant prior to the execution of the note and mortgage of the mental condition of Heber Bithell, such action was prompted by the theory that such evidence was material in considering the equities to be determined.

The court in his memorandum decision stated that although Heber Bithell's insanity was, as certified by the physicians, of a melancholia type and recurring, the fact that the note and mortgage were negotiated, executed and acknowledged in one of Bithell's normal periods "would not give life or validity to the note and mortgage, it is a fact which should be given consideration by a court of equity."

The commitment to the State Hospital South to which reference has been made was a summary proceeding before the probate judge with the advisory assistance of physicians, under the provisions of Title 64, Chapter 2, I. C. A., a special proceeding for determining whether a person is "so far disordered in his mind as to endanger health, person, or property" such as to justify the state in depriving him of his personal liberty and affording him the benefit of proper care and remedial aid. I. C. A., sec. 64–204, provides for the subpoenaing of at least one graduate of medicine to appear and attend the examination, which physician must hear the testimony and must make a personal examination of the alleged insane person (I. C. A., sec. 64–207), and after hearing the testimony and making the examination, must, if he believes such person to be dangerously insane, make a certificate that such person is so far disordered in his mind as to endanger health, person, or property, etc. I. C. A., sec. 64–209, provides that if the judge, after such examination, "*and certificate made*" believes the person so far disordered in his mind as to endanger health, person or property, he must make an order that he be confined in the insane asylum. The foregoing summary proceeding is in the nature of a hearing before a lunacy commission which determines whether or not the person is "so far disordered in his mind as to endanger health, person or property," and a commitment to the asylum thereunder is not a conclusive judicial determination of sanity or insanity, capacity or incapacity. The Supreme Court of California considering the provisions of sections 2168 et seq. of the Political Code, the provisions of which are similar to the provisions of Title 64, Chapter 2, I. C. A., and sections 38, 39 and 40 of the Civil Code of California, which provisions are almost identical with those of I. C. A., secs. 31–106, 31–107 and 31–108, heretofore quoted, has consistently determined that the proceedings before a judge with the advisory assistance of physicians is a summary proceeding for the purpose of determining mental condition and does not constitute a conclusive judicial determination of sanity or insanity, competency or incompetency, capacity or incapacity,

nor the right to contract. In the course of the opinion in *Fetterly v. Randall*, 92 Cal. App. 411, 268 Pac. 434, the following language appears:

"On the 13th day of March, 1932, and after a proceeding authorized by sections 2168, 2169 and 2170 of the Political Code, viz., a hearing before a superior judge with two physicians present, sometimes referred to as the 'lunacy commission,' respondent was ordered committed to the state hospital for the insane. . . . .

"The proceeding before the judge, with the advisory assistance of two physicians, under the provisions of section 2169 et seq. of the Political Code, is a summary proceeding for the purpose of determining whether or not the person charged with being insane is in fact in such a mental condition as to justify the state in depriving him of his personal liberty and affording to him, if it is found needed the benefit of proper care and remedial aid. It is not a conclusive judicial determination of sanity or insanity . . . . *People v. Willard*, 150 Cal. 543, 89 Pac. 124, . . . . *Kellogg v. Cochran*, 87 Cal. 192, at p. 198, 25 Pac. 677, 679 [12 L. R. A. 104]. . . . .

"And again, in *People v. Prosser*, 56 Cal. App. 454, at pp. 458, 459, 205 Pac. 869, 871, the court says:

" 'The court committed no error in refusing to give the following instruction: "You are instructed that if you find that defendant was committed to a state hospital in California as insane by the superior court of any county of California that the law presumes that defendant continues insane until such time as he was lawfully discharged from the state hospital or was legally adjudicated sane." This instruction proceeds upon the mistaken assumption that such adjudication is conclusive evidence that the party was insane; whereas, it was only evidence to be weighed by the jury, and the effect of which was to be determined by them, but they were not in anywise concluded by the opinion of the medical examiners or by the judgment which declared appellant insane. *People v. Willard, supra.* In the Willard Case the defendant, just a few minutes after he had been examined and found insane and ordered committed to the asylum, killed the sheriff

of Mendocino county, before he had left the judge's chambers where the examination was held, but his conviction for murder of the first degree was sustained by the Supreme Court, said commitment being regarded as merely evidence of insanity to be overcome by other evidence that he was sane.'

"We think the above quotations demonstrate the incorrectness of the court's finding in the instant case 'that said plaintiff (respondent here) was adjudged insane at a regular hearing of said court on the 13th day of March, 1922; *and that it does not follow as a matter of law that after such proceeding the respondent was incapable of contracting.*"

In *Kellogg v. Cochran,* 87 Cal. 192, 25 Pac. 677, 12 L. R. A. 104, it is said:

"I think the order of commitment is not conclusive evidence against the plaintiff in this action of his insanity at any time, . . . . The proceeding before the judge is only preliminary, and is analogous to the preliminary examination of a criminal charge by a magistrate."

And in *People v. McConnell,* 80 Cal. App. 789, 252 Pac. 1068, the court says:

"It has been held in this state that, in proceedings for the commitment of a person to a state hospital, there is no judgment roll in the sense that it determines conclusively anything; that the commission established in each county to ascertain the mental condition of one alleged to be insane is purely a creature of the statute, the sole duty of which is to inquire and determine whether the mental condition of the person examined is such as to warrant his detention in the asylum for treatment. It is not intended as a tribunal in which the status of the alleged insane person is fixed. *People v. Willard,* 150 Cal. 543, 89 Pac. 124.''

To the same effect as the foregoing see also: *People v. Calhoun,* 9 Cal. App. (2d) 97, 48 Pac. (2d) 754; *People v. Gilberg,* 197 Cal. 306, 240 Pac. 1000; *People v. Prosser,* 56 Cal. App. 454, 205 Pac. 869; *Aldrich v. Barton,* 153 Cal. 488, 95 Pac. 900; *People v. Willard,* 150 Cal. 543, 89 Pac. 124; *Aldrich v. Superior Court,* 120 Cal. 140, 52 Pac. 148; *In re Buchanan,* 129 Cal. 330, 61 Pac. 1120, 50 L. R. A. 378; *Green-*

*wood v. Wilkinson,* 124 Okl. 300, 256 Pac. 46; *Kirk v. Mc-Clendon,* 94 Okl. 33, 220 Pac. 949; *Norris v. Dagley,* 64 Okl. 171, 166 Pac. 718; *Ex parte Maas,* 10 Okl. 302, 61 Pac. 1057; *Dewey v. Algire,* 37 Neb. 6, 55 N. W. 276, 40 Am. St. 468; *Knox v. Haug,* 48 Minn. 58, 50 N. W. 934; *Leggate v. Clark,* 111 Mass. 308; *Wheeler v. State,* 34 Ohio St. 394, 32 Am. Rep. 372; Smoot, Law of Insanity, page 124, sec. 164.

A commitment upon a preliminary or summary hearing under the provisions of I. C. A., sec. 64–201 et seq., for the purpose of determining whether a person is "so far disordered in his mind as to endanger health, person or property" is not a conclusive judicial determination of incapacity within the meaning of I. C. A., sec. 31–108. No judicial determination of his incapacity having been made the commitment upon the summary hearing was not conclusive of Heber Bithell's capacity, sanity or insanity.

We are of the opinion that under the facts disclosed by the record in the case of *Miles v. Johanson,* 40 Ida. 782, 238 Pac. 291, the conclusion reached therein was correct. In that case both parties sought a rescission of the contract, the real question being as to the measure of damages. It should be and is hereby overruled in so far as it is in conflict with the views herein expressed.

It follows from what has been said that the findings, conclusions and decree of the court cannot be upheld. The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed. Costs awarded to appellant.

Ailshie, J., and Rice, D. J., sitting in place of Holden, J., who deemed himself disqualified to participate herein, concur.

Givens, C. J., dissents from the portion of the opinion overruling *Miles v. Johanson, supra,* otherwise concurs.

MORGAN, J., Dissenting.—I dissent from that part of the opinion which makes use of what is therein referred to as a memorandum decision, which consists of two letters written

by the trial judge to the attorneys in the case prior to making findings of fact, conclusions of law and decree.

The law does not require district judges to write such letters nor to render so called memorandum decisions and they have no place in the record on appeal, nor should they be taken into consideration by us in rendering our decisions affirming, modifying or reversing judgments or orders appealed from.

If the decision of the district judge, consisting of the findings and conclusions, follows the law and is supported by the evidence it should be upheld and the judgment should be affirmed regardless of how unsound the theories may have been which prompted him to render it. If his decision violates the law or is not supported by the evidence the judgment should be reversed although he may have expressed sound theories in letters to counsel prior to making his findings, conclusions and entering his judgment.

This court has not been entirely silent on this subject. In *North Robinson Dean Co. v. Strong,* 25 Ida. 721, 730, 139 Pac. 847, 850, it said:

"There is also in the record a memorandum of decision of Judge Budge, dated July 25, 1913, and filed on the same date. This decision of Judge Budge has no place in this record and does not bind this court in any way or control our consideration of the case, and it no doubt was his opinion addressed to the attorneys after the conclusion of the trial in the district court and the filing and recording of the verdict of the jury and the judgment of the trial court, which was dated the 30th day of October, 1912. The overruling of the motion for a new trial was dated August 26, 1913; this was after Judge Budge had rendered his decision on the 25th of July."

In *Corker v. Cowen,* 30 Ida. 213, 215, 164 Pac. 85, 86, we said:

"As to those matters referred to in the first paragraph of appellant's assignment of errors this court is without jurisdiction, for the reason that the errors there assigned have reference to the opinion of the trial court, which though in-

corporated into the record, is not properly a part thereof under sec. 4818, Rev. Codes, as amended by Sess. Laws, 1911, p. 375, which specifies the contents of the record on appeal. (*Graham v. Linehan,* 1 Ida. 780; *Williams v. Boise Basin Min. etc. Co.,* 11 Ida. 233, 81 Pac. 646; *Taylor v. McCormick,* 7 Ida. 524, 64 Pac. 239; *Stewart Mining Co. v. Ontario Mining Co.,* 23 Ida. 724, 132 Pac. 787; *Smith v. Faris-Kesl Construction Co.,* 27 Ida. 407, 150 Pac. 25.) It is not within the province of this court on an appeal to question the soundness of the trial court's reasons in giving its decision, for they cannot affect the judgment itself, however enlightening they may be to counsel contemplating an appeal. (*Pennsylvania Co. v. Versten,* 140 Ill. 637, 30 N. E. 540, 15 L. R. A. 798.)''

In *Baldwin v. Singer Sewing Machine Co.,* 48 Ida. 596, 284 Pac. 1027, the first section of the syllabus, which correctly reflects the part of the opinion having to do with this subject, is as follows:

''Written opinion of trial judge constitutes no part of the record and is not before supreme court on appeal.''

Although the letters of the district judge to the attorneys, referred to as a memorandum decision, were bound with the transcript there is no authority in law for so doing and they are no part of the record on appeal prescribed by statute. One of these letters shows quite clearly, as pointed out by the majority, the trial judge was of the opinion the commitment of Bithell to the hospital for the insane, together with the fact that he had not been certified or adjudged to be cured or restored to his reason as provided for in I. C. A., sec. 31–108, showed conclusively his incapacity to contract and rendered the mortgage void. The findings of fact and conclusions of law, which the trial judge correctly states to be the decision of the court, do not disclose that the finding that Bithell was insane and incompetent to contract was based solely on the adjudication in the insanity proceeding. In making use of the so-called memorandum decision the majority has gone outside the record for justification of a reversal of the judgment.

When findings of fact are insufficient the case should be remanded with instructions to make further findings. Those made should not be supplemented by recourse to unauthorized observations by the trial judge.

ON PETITION FOR REHEARING.

(January 13, 1936.)

BUDGE, J.—We have carefully considered the showing made in the petition for rehearing filed in the above-entitled cause. We find no reason that would justify granting the petition and it is therefore denied.

It is suggested in the petition that the following language be clarified:

"The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed."

The above language directs the trial court to take further pertinent evidence if the parties so desire and to make findings of fact, conclusions of law, and enter judgment in accordance with the views expressed in the opinion.

Givens, C. J., Morgan and Ailshie, JJ., and Rice, D. J., concur.