[Crim. No. 1350. In Bank.—February 8, 1907.]

THE PEOPLE, Respondent, v. FRANK WILLARD,
Appellant.

CRIMINAL LAW—MURDER—INSANITY—COMMITMENTS TO ASYLUM—EVIDENCE—AFFIDAVITS—EXAMINATIONS—CERTIFICATES.—Upon a trial
for murder, where the defense was insanity, and it appeared that
defendant had been twice, prior to the day of the homicide, committed to a state hospital for the insane on account of alcoholism,
and, after brief detention, had been discharged therefrom, the affidavits, reports of examining physicians and their certificates, upon
those commitments, offered in evidence by the defendant, were properly rejected. The certificates were purely hearsay, and not admissible for any purpose.

Id.—Absence of Judgment-Roll—Commission a Creature of Statute —Status not Fixed.—There is no judgment-roll upon the commitment of a person to a state hospital for the insane, in the sense that it determines conclusively anything. The commission of physicians established in each county is purely a creature of statute, to determine whether the mental condition of the person examined is such as to warrant his detention in the asylum for treatment. It is not intended as a tribunal in which the *status* of the alleged insane person is fixed.

Id.—Commitment on Day of Homicide—Protest by Defendant—Subsequent Discharge on Habeas Corpus—Evidence—Petition and Proof.—Where the defendant was a third time examined and committed to the asylum on the day of the homicide, at the instance of deceased, against defendant's protest that he was not insane, and ought not to be sent there, and he subsequently voluntarily petitioned for a discharge upon *habeas corpus,* the petition presented, with its declaration as to his sanity, which it appears he read and understood, and his testimony on that question at the hearing, were admissible, as bearing on the question of his mental capacity when the homicide was committed.

Id.—Defense of Insanity—Rule of Evidence.—It is a rule of evidence in this state that, where the defense of insanity is interposed against a criminal charge, the acts and conduct of the accused at the time of, and within a reasonable time before and after, the alleged criminal act is committed may be presented to the jury upon the question of insanity existing at the time of its commission.

Id.—Admissions of Defendant—Constitutional Rights.—The admissions and statements of the defendant, and the testimony given by himself upon *habeas corpus* proceedings, bearing wholly on the question of his sanity, in which there is nothing that can be construed as amounting to a confession of guilt, are admissible against him, and are not violative of any of his constitutional rights not to be a witness in a criminal case against himself, whether they are voluntary or not.

Id.—Rebuttal—Order of Proof—Discretion.—Where upon rebuttal of the insanity of the defendant some evidence was allowed to be offered which might have been given in chief, it was within the discretion of the court to allow a departure from the order of proof, and the fact of such departure constitutes no ground of complaint where no abuse of discretion affirmatively appears.

Id.—Misconduct of District Attorney—Honest Mistake as to Evidence—Correction by Court.—An honest mistake by the district attorney as to evidence, as to which, after discussion, he was corrected by the judge, and which was not persisted in, does not constitute misconduct prejudicial to the defendant.

Id.—Argument of District Attorney—Inferences from Evidence.—It was not objectionable for the district attorney in his argument to speak of certain inferences and deductions from the evidence which

the jury should make where no statement was made of any facts which the evidence did not disclose.

ID.—BURDEN OF PROOF OF INSANITY.—Where the defense of insanity is relied upon, the burden of proof rests upon the defendant to establish that defense by a preponderance of evidence.

ID.—CONFLICTING EVIDENCE—SUPPORT OF VERDICT.—Where the homicide was admitted, and the evidence was conflicting as to the insanity of the defendant being such as would excuse him from crime, the verdict is sufficiently supported.

ID.—COMMITMENTS TO ASYLUM NOT CONCLUSIVE EXCUSE FOR CRIME.— The several commitments of the defendant to the insane asylum do not prove that he was insane to the extent that the law would exempt him from responsibility for his criminal acts. A person may be partially insane upon one or several subjects, and for that reason be a proper person for confinement in a state insane asylum, to be cared for and treated for his mental disorder, and yet at the same time such person may be perfectly sane upon all other subjects and entirely responsible under the law for a criminal act committed by him.

ID.—INSANITY, WHEN AND WHEN NOT A DEFENSE.—That insanity may be available as a defense to a crime charged it must appear that the defendant when the act was committed was so deranged and diseased mentally that he was not conscious of the wrongful nature of the act committed. Although he may be laboring under partial insanity, or an insane delusion, yet if he has reasoning capacity sufficient to distinguish between right and wrong as to the particular act he is doing, and to know that it is wrong and criminal and will subject him to punishment, he must be held responsible for his conduct.

ID.—EFFECT OF LAST COMMITMENT—EVIDENCE OF RATIONALITY—PRISON THREAT—QUESTION OF FACT FOR JURY.—The commitment of the defendant to the asylum on the day of the homicide as being dangerous and laboring under an insane delusion is not conclusive, where there is counter evidence that he was rational on that day and prior and subsequent thereto, and also evidence to show that when last previously discharged he had threatened to kill any one who would send him there again. Under such evidence, it was a question of fact for the jury to determine whether at the time of the homicide defendant was insane, and to what extent; and their verdict that he was then sufficiently sane to be responsible therefor will not be disturbed.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. A. G. Burnett, Judge presiding.

The facts are stated in the opinion of the court.

CL Cal.—35

T. L. Carothers, and Charles M. Mannon, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant Attorney-General, E. B. Power, Deputy Attorney-General, and Robert Duncan, District Attorney, for Respondent.

LORIGAN, J.—The appellant was tried in Mendocino County for the alleged murder of J. H. Smith, the sheriff of that county.

The immediate circumstances attending the killing of deceased, although by no means the only evidence in the case, are undisputed. The defendant, a man forty-two years of age, was born in Mendocino County, and had lived there practically all his life. He had been twice committed by the judge of the superior court of Mendocino County, after examination as to his sanity held in the city of Ukiah, to the Mendocino state hospital for insane, in both instances on account of alcoholism, and after remaining there a short time had recovered and been discharged from the asylum, his second discharge occurring some time in the early part of 1903.

On December 20, 1905, two days prior to the homicide, the defendant appeared in the city of Ukiah, and the deceased, as sheriff, having been informed that he was acting in a peculiar manner, brought him about 8:30 A. M. on December 22, 1905, to the sheriff's office. Leaving him there, the deceased at once repaired to the chambers of the judge of the superior court, where he made affidavit that the defendant was insane, and that it was dangerous for him to be at large. The judge doubtless thought the defendant would be brought before him, and fixed 9 o'clock of that morning as the time for the examination, and the defendant, having been formally arrested by deceased, was immediately brought into the judge's chambers for that purpose. Two physicians were summoned as medical examiners, and after an examination had they reported to the judge of the superior court that the defendant was insane and "homicidal and dangerous." On this report defendant was adjudged insane by the judge of said court, and ordered committed to the Mendocino state hospital for the insane for care and treatment. Just as the judge was signing the order of commitment, defendant declared that he

was not insane; that he ought not be sent to the asylum—that it was an outrage. He became angry and started to leave the judge's chambers, whereupon the deceased followed to intercept him. As defendant approached the door he drew a pistol from his pocket, opened the door, and, as he stepped into the hallway, whirled and fired at deceased, who was some five feet from him inside the judge's chambers, and killed him. Defendant fled, and was pursued and captured where he had taken to the brush on the hillside about a mile and a half from the scene of the tragedy.

Upon the trial the jury returned a verdict of murder of the first degree, and, a motion for new trial having been denied, judgment of death was pronounced upon the defendant. He appeals from the judgment and from the order denying his motion for a new trial.

No attempt was made on the part of the defendant upon the trial to dispute the killing of the deceased under the circumstances detailed, the sole contention on his behalf being that he was irresponsibly insane at the time of the homicide, and the principal—it may be said all—testimony in the case was devoted to that subject.

Upon this appeal it is urged by appellant as grounds of reversal that the court erred in rejecting evidence offered by appellant on the question of his insanity, and in admitting evidence offered on the part of the prosecution on the same subject, and erred also in instructing the jury on the degree of proof required by appellant under the law to establish his insanity. It is also claimed that the district attorney was guilty of misconduct precluding the appellant from having a fair trial. Lastly, it is contended that on the question of the insanity of appellant, the evidence was so overwhelmingly in support of it that the verdict of the jury was contrary to the evidence and necessitates a reversal.

Proceding now to a disposition of these points as they are presented, and, first, as to the alleged erroneous rejection by the court of testimony offered by appellant in proof of his insanity.

It appeared from the evidence, as a fact, that the defendant had been three times committed to the Mendocino state hospital for insane, the first commitment being on February 2, 1901, the second on May 29, 1902, (these being the times

of commitment heretofore referred to,) and the third on the morning of the homicide. In connection with the testimony of the medical superintendent of said hospital, who testified to the fact of such commitments, the attorneys for defendant offered in evidence all the proceedings pertaining to each of these three insane examinations of appellant, which consisted of the complaint charging his insanity, the warrant of arrest, report of the medical examiners, their certificate, and the judgments and orders of commitment by the judge of the su-·perior court. To the offer of all the documents pertaining to the examination of December 22, 1905, the people raised no objection and they were admitted. As to the admission of all of the documents pertaining to the two prior examinations, except as to the judgment and order of commitment in each case to which no objection was raised, the court sustained the objection of the district attorney. This ruling is claimed to have been erroneous, but we think it was correct. We do not determine on this appeal whether the judgments and orders of commitment which were admitted in evidence would have been admissible if objection had been interposed against their admission. No objection was made to any of them by the district attorney, and hence the question of their admissibility is not involved on this appeal, except in as far as that question is affected by discussing the admissibility of the other documents. As to the other documents which appellant insists should have been admitted,—the affidavit, report of examining physicians, their certificates, etc.,—the court was clearly right in rejecting them. The certificates were purely hearsay evidence and were not admissible for any purpose. It is contended by appellant that all these proceedings constituted a judgment-roll. There is nothing in this contention. In a proceeding such as is in question here, there is no judgment-roll, in the sense that it determines conclusively anything. The statute provides for a commission in each county in the state, consisting of at least two physicians and a judge of the superior court of the county, whose duties in the examination of one alleged to be insane are limited and confined to the specific purpose,—viz. to ascertain whether such alleged insane person is a proper subject to be admitted for care and treatment to the insane asylums of the state. This commission is purely a creature of the statute. It is not intended as, and

is not, a tribunal in which the *status* of the alleged insane person is fixed, but simply a commission which determines whether the mental condition of the person it has examined is such as warrants his detention in the asylum for treatment. From these considerations we are satisfied that the ruling of the court, as far as it went, was correct.

It is further claimed by appellant that the court erred in admitting, over his objection, a petition for a writ of *habeas corpus* made by him, and likewise his testimony given on the hearing thereof. It appears that defendant was placed in the Mendocino state hospital under the commitment of December 22, 1905, on that date. Thirteen days thereafter a petition for a writ of *habeas corpus* was presented to the superior court of Mendocino County, signed by appellant himself. In it he stated that on December 22, 1905, he was committed to the Mendocino state hospital as an insane person, and that he "is now sane," and prayed for his discharge from said hospital. We think the petition was admissible. As the order of December 22, 1905, committing him to the hospital had been introduced in evidence, it was proper for the people to show by the records of the court that he had been discharged therefrom, in order that the prosecution might not be placed in the attitude of trying the appellant for murder while he was detained by the medical superintendent of the hospital under the commitment as insane. It is true that, previous to the offer, the superintendent of the hospital had testified that appellant had been discharged from the hospital on *habeas corpus* proceedings, but this was only cumulative evidence, and did not affect the admissibility of the record. Aside from this, however, the making of this petition was the voluntary act of the appellant, and the evidence shows that he read and understood it when it was presented. This being true, and being an act done by him within a short time after the homicide, the fact of its presentation, and the declarations of the defendant made in it, were admissible as bearing on the question of the mental condition of the appellant at the time the homicide was committed. It is a rule of evidence in this state that where the defense of insanity is interposed against a criminal charge the acts and conduct of the accused at the time, and within a reasonable time before and after, the alleged criminal act is committed may be presented

to the jury upon the question of insanity existing at the time of its commission. (*People* v. *Lee Fook,* 85 Cal. 300, [24 Pac. 654]; *People* v. *McCarthy,* 115 Cal. 260, [46 Pac. 1073]; *People* v. *Zeigler,* 142 Cal. 338, [75 Pac. 1090].)'

Within the rule of these authorities, the claim of appellant that the admission in evidence of his testimony taken on the hearing of said petition was error must also be disposed of against him. This testimony was admitted solely on the question of the mental condition of the appellant, and within that limitation was properly admitted. With reference to the admission of this evidence, it is insisted that by permitting its introduction it was in fact compelling the appellant ''in a criminal case to be a witness against himself,'' contrary to the provisions of amendment V of the federal constitution, and of article I (sec. 13) of the constitution of this state. There is no merit in this claim. The *habeas corpus* proceedings were not instituted by any public authority or by any friend on behalf of appellant, but by appellant·himself, and it fairly appears from his own statement, while testifying in the *habeas corpus* proceeding, that he was informed by the district attorney that, were he discharged under it, he would still be prosecuted for the killing of deceased. He was not required to take the stand at the hearing on the application for the writ; he was under no compulsion whatever, but, as the record shows, was sworn on his own behalf. Under such circumstances it cannot be said that the introduction of his testimony given on the *habeas corpus* proceedings was in effect at all violative of any of his constitutional rights. Not only was the testimony voluntarily given and the proceeding inaugurated solely by himself, but, when his testimony as there given is examined, there is nothing in it which can be construed as a confession or admission of guilt, and it is established as the rule in this state that the admissions or statements made by the defendant which do not amount to a confession of guilt are admissible against him, whether they are voluntary or not. (*People* v. *Le Roy,* 65 Cal. 613, [4 Pac. 649]; *People* v. *Knowlton,* 122 Cal. 357, [55 Pac. 141]; *People* v. *Miller,* 122 Cal. 84, [54 Pac. 523].)

Complaint is further made as to the admission in rebuttal of certain evidence offered by the prosecution. Most of it, particularly on the question of the insanity of appellant, was

properly evidence in rebuttal. As to the rest of it, it is apparent that it would have been admissible if offered in chief. The fact that it was permitted to be given in rebuttal constituted of itself no ground of complaint. A court is warranted in departing from the order of proof prescribed by section 1093 of the Penal Code under proper circumstances. Whether it shall permit such departure is a matter committed to its sound discretion, and its action in that regard is not ground upon which error may be predicated, unless the discretion appears to have been grossly abused, and this abuse must affirmatively appear. (Pen. Code, sec. 1094; *People* v. *Gordan*, 103 Cal. 568, [37 Pac. 534].) There is no appearance of abuse in permitting the departure in the case at bar; hence, the point made is not well taken.

We have discussed all the rulings of the court made during the trial relative to the admissibility of evidence of which appellant complains and which we deem worthy of particular consideration. Some other objections on the same line are urged by appellant, but we do not think them tenable or requiring any special mention.

As to the other points urged. The claim of prejudicial misconduct on the part of the district attorney is, in our judgment, of no force. In his closing address to the jury the district attorney, in arguing the existence of possible malice of appellant against the deceased, stated that according to the two commitments in evidence the deceased had placed the appellant in the asylum. Exception was taken by appellant to this statement. After some discussion between court and counsel on both sides as to what the evidence was in that respect, the court declared that there was no evidence in the record to sustain the statement, and instructed the jury then and there to disregard the remarks of the district attorney concerning it. Thereafter no reference to the subject was made by the district attorney. It is apparent from the record that this statement of the district attorney was made in the honest belief that the evidence supported it, and, as the court immediately pointed out his error and instructed the jury to disregard it, we are satisfied that under those circumstances the conduct of the district attorney cannot be said to have been so prejudicial to the appellant as to warrant a reversal on that account. Verdicts will not be disturbed

merely on account of the inadvertent mistakes of counsel as to matters of evidence in addressing juries. It is only when from the course of conduct of a prosecuting officer it is apparent that the right of the defendant to a fair trial has been prejudicially invaded that he can successfully complain of it, and nothing of the kind appears here. (*People* v. *Ward,* 105 Cal. 340, [38 Pac. 945]; *People* v. *Putman,* 129 Cal. 262, [61 Pac. 961].)

As to the other matter concerning which misconduct by the same officer is specified, less need be said. It occurred also in his closing address. In his remarks no statement was made by him of any facts which the evidence did not disclose. The matters complained of were suggestions in his argument of certain inferences and deductions which the jury should make from particular evidence in the case. The exception was leveled against these deductions and inferences. This was no ground for exception. Counsel have a right to present to the jury their views of the proper deductions or inferences which the facts warrant. Their reasoning may be faulty, their deductions from the premises illogical, but this is a matter for the jury ultimately to determine, and not a subject for exception on the part of opposing counsel.

It is next insisted that the court erred in giving an instruction to the jury upon the subject of insanity,—that the burden of proof was upon the defendant to establish that defense, and that it must be established by a preponderance of evidence.

But this has been the established rule in this state practically since its earliest history, repeatedly affirmed by this court, so that it cannot be considered as open to further question. It was first established as the correct rule to be applied in this state in *People* v. *Myers,* 20 Cal. 518, and has been adhered to ever since. (*People* v. *Travers,* 88 Cal. 233, [26 Pac. 88], citing a list of cases sustaining the rule since *People* v. *Myers,* 20 Cal. 518; *People* v. *Bawden,* 90 Cal. 195, [27 Pac. 204]; *People* v. *McNulty,* 93 Cal. 443, [26 Pac. 597, 29 Pac. 61]; *People* v. *Bemmerly,* 98 Cal. 299, [33 Pac. 263]; *People* v. *Ward,* 105 Cal. 342, [38 Pac. 945]; *People* v. *Allender,* 117 Cal. 81, [48 Pac. 1014].)

We approach now the last point made by appellant,—that the evidence is insufficient to support the verdict. Counsel for

appellant make this contention in their brief without endeavoring to at all specify in what particulars it is insufficient; they simply state the point. We have, however, considering the gravity of the position of the appellant on this appeal, made a careful examination of the record to find if this claim of appellant finds support from it, and are satisfied that it does not. This court cannot disturb a verdict unless there is no evidence to support it, or where the evidence relied on by the prosecution is apparently so improbable or false as to be incredible, or where it so clearly and unquestionably preponderates against the verdict as to convince this court that its return was the result of passion or prejudice on the part of the jury. In a case presenting any of these features this court would deal with it as a matter of law. Such a situation, however, can only be presented on appeal in extreme cases, and, notwithstanding the claim of appellant, the record before us does not disclose any such case. It presents the usual and ordinary situation where the evidence was conflicting as to the only real question in the case,—the insanity of the appellant,—and the jury finding against it, and their finding being supported by material evidence, is conclusive on this court.

The claim of counsel that on the subject of the insanity of appellant the evidence was so overwhelmingly in favor of it is, as we say, without foundation. This claim seems to be based on the several orders of commitment to the insane asylum. But it did not at all follow because appellant was so committed that the commitment was proof that he was insane to the extent that the law would exempt him from responsibility for his criminal acts. There are many kinds and degrees of insanity, and it is not every kind or degree which will relieve a person from such responsibility, and the degree of mental impairment which would authorize his confinement in an asylum for the insane may be entirely different from the degree of mental derangement which will relieve him from responsibility for his criminal acts. A person may be partially insane, or be insane upon one or several subjects, and for that reason be a proper person for confinement in a state insane asylum to be cared for and treated for his mental disorder, and yet at the same time such person may be perfectly sane upon all other subjects and entirely responsi-

ble under the law for a criminal act committed by him. (*In re Buchanan*, 129 Cal. 330, [61 Pac. 1120].)

That insanity may be available as a defense to a crime charged, it must appear that the defendant, when the act was committed, was so deranged and diseased mentally that he was not conscious of the wrongful nature of the act committed. If he has reasoning capacity sufficient to distinguish between right and wrong as to the particular act he is doing, knowledge and consciousness that what he is doing is wrong and criminal and will subject him to punishment, he must be held responsible for his conduct. Although he may be laboring under partial insanity,—as, for instance, suffering from some insane delusion or hallucination,—still if he understands the nature and character of his action and its consequences,—if he has knowledge that it is wrong and criminal, and that if he does the act he will do wrong, such partial insanity or the existence of such delusion or hallucination is not sufficient to relieve him from responsibility for his criminal acts.

Now, while it is true that the appellant was committed to the insane asylum under two commitments prior to the last one of December 22, 1905, there was no evidence introduced to show that he was irresponsibly insane at those times within the rule as the law prescribes it. In fact, the evidence shows that on both these occasions he was suffering merely from acute alcoholism; that he was to some extent mentally deranged therefrom, but after he had been there from ten days to a couple of weeks he recovered, and was subsequently discharged from the asylum as cured.

As to the last commitment to the asylum—the one made on the morning of the homicide. The fact that the appellant had been ordered committed to the Mendocino state hospital for insane immediately prior to the homicide did not of itself exempt him from responsibility for the killing of deceased. He might have been suffering from partial insanity, such as would justify his detention in the asylum for care and treatment, and still, as we have seen, not be insane to such an extent as to be deemed irresponsible in law for his conduct. The fact that he was committed to the asylum did not conclusively establish the fact that he was insane at all. Notwithstanding the commitment, it was a question for the jury to determine whether he was in fact insane, and to what ex-

tent. They were in no wise concluded by the report of the
medical examiners that appellant was insane, or by the opin-
ion of the medical examiners as to the nature of his insanity,
or by the judgment which declared him insane and ordered
him committed to the asylum. The report of the medical
examiners and the judgment and order of commitment, be-
ing before them, were to be regarded by the jury only as
evidence bearing on the question of insanity. These were to
be considered by them, but what weight or credibility, if
any, they should give them was entirely a matter for their
determination.

Now, as to the judgment and commitment of the morning
of December 22, 1905. It appears from the testimony of the
examining physicians given on the trial that they believed
from the evidence adduced at the medical examination, and
so stated in their medical report, that the appellant was the
subject of an insane delusion,—namely, that he was appointed
by President Roosevelt and Governor Pardee a peace officer
to arrest people or evil-doers. They testified that during the
examination upon all other subjects he talked rationally and
appeared to be sane.

As to the statement in the report of their examination of
appellant that he was "homicidal; dangerous," they testified
that this statement was made by them in response to one of
the questions contained in a blank form for medical examina-
tions in insanity cases prescribed by the state commission
in lunacy. The question prescribed in that form was: "Is
alleged insane person noisy, restless, violent, dangerous, de-
structive, incendiary, excited or depressed, homicidal or sui-
cidal?" It was in response to this inquiry that the exam-
ining physicians answered "homicidal; dangerous." As a
witness on the trial, testifying as to the medical examination
of appellant, Dr. Bond, a physician who acted as one of the
medical examiners, and who gave the answers to be written
down, said that during the examination of appellant, after
the latter had stated that he was appointed by President
Roosevelt and Governor Pardee as a peace officer to arrest
evil-doers, he asked him if he would kill a person in the exer-
cise of his duties as peace officer,—whether he would kill a
wrong-doer if he had him under arrest,—whether he would
injure him in any way,—to which appellant responded that

he would kill him if necessary; that this inquiry and the answer of appellant furnished the basis for stating that he was "homicidal; dangerous." Upon the trial four other witnesses testified to other conversations with the defendant, having for their basis this apparent delusion of being appointed as a peace officer by the president and governor, and that in these conversations defendant, in their judgment, talked irrationally. This was practically all the evidence offered on the part of the defense to sustain the plea of insanity.

Upon the part of the prosecution a number of persons were called who had known defendant intimately a number of years prior to the homicide, who testified that he was rational during all the time they knew him. A large number of witnesses testified to the conduct of the defendant immediately subsequent to the homicide, and that he was entirely rational. And the assistant medical superintendent in charge of the asylum to which appellant was taken on the day of the homicide under the commitment of that date, who examined, observed, and talked with him while he was there, testified that during all of the time he was there he was perfectly rational. Attendants at the asylum, who observed and conversed with him, testified likewise. The physicians who examined him at the hearing on December 22, 1905, testified, as we have already said, that upon every other subject than the delusion referred to he was sane, and the superior judge who presided at that examination testified that except as to that delusion defendant appeared to be entirely rational. There was further evidence in the case that several years before the day of the homicide appellant had stated that he would kill anybody who would try to put him in the asylum again, and the day before the homicide made the same declaration.

This is a general statement of the evidence presented on both sides. We do not deem it necessary to go into detail, and state it only as far as we have, to show that there was no such preponderance of evidence in favor of the insanity of appellant as is claimed by his counsel, but, on the contrary, there was a clear and marked conflict in the evidence on this issue.

The trial court fully and fairly instructed the jury on the law of insanity as applied to the evidence in the case, with special instructions for determining the responsibility of one suffering from an insane delusion, if they found it existed.

Under the conflicting evidence in the case, and applying the instructions to it, the jury in returning a verdict of guilty determined that the appellant was sane. The evidence on behalf of the prosecution, if believed by the jury, warranted them in doing so, and we cannot disturb their conclusion.

This disposes of all the points made on the appeal, and no reason appearing for the reversal of the judgment, it and the order denying the motion for a new trial are affirmed.

McFarland, J., Angellotti, J., Sloss, J., Henshaw, J., and Shaw, J., concurred.

Rehearing denied.