[Crim. No. 2454. Second Appellate District, Division Two.—May 31, 1934.]

THE PEOPLE, Respondent, v. JOSEPH ROSENTHAL, Appellant.

Joseph L. Fainer and R. E. Parsons for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

SCOTT, J., *pro tem.*—Defendant was convicted of robbery in the first degree and has appealed from the judgment of conviction and from the order denying his motion for a new trial.

The testimony discloses that on the evening of March 25, 1933, at about 10:30 P. M., one DuBoise, proprietor of a garage in Los Angeles, and his companion Wesselman, were held up at the point of a gun by two unmasked men, one of whom both identified as Rosenthal. The latter denied the commission of the offense and offered evidence by way of an alibi to the effect that at the time of the holdup he was at or near his home.

Appellant contends that the district attorney was guilty of prejudicial misconduct during the trial and argument of the case. A defense witness, Joe Blake, was called to the stand and upon his being sworn the district attorney asked permission to question him on *voir dire* with respect to the oath, and on cross-examination asked him, "Do you believe in God?" This request was denied and defendant's objection to the question was sustained. They are cited as misconduct. If the district attorney had reason to believe that some form of oath connected with or in addition to the one customarily administered would be more solemn and obligatory, it was a proper discharge of his

duty to bring that to the attention of the court in order that the latter's discretion might be properly exercised. (Code Civ. Proc., secs. 2095, 2096.) The witness admitted that he had been convicted of robbery, a felony, and if the jury disbelieved his story it is reasonable to assume that it was because he was thus impeached.

■ Counsel for defendant questioned his witness Soforenko with reference to a visit made to the witness late the preceding night by two deputy district attorneys. The witness, when asked, "Were you threatened by the gentlemen last night?" stated as follows: "Well, I was certainly given to understand that things might go wrong if I testified" and "they said that they believed that I was not telling the truth, and that the lid would be blown off and they would go—they intended to go to the grand jury". There is no contention by defendant that the witness testified falsely or that the alleged threats had any effect upon him.

A similar incident with reference to the witness Schlyen was presented by defendant, and is now complained of in like manner. These matters were brought to the attention of the jury by defendant in an obvious attempt to create prejudice in his favor, and could not be construed as misconduct of the district attorney in the trial of the case.

■ Defendant's wife was asked on cross-examination, with reference to certain parties, whether "when they came down to request payment of rent, and seeking Mr. Rosenthal, that you told them that Mr. Rosenthal was in San Francisco?" The asking of this question is assigned as misconduct, as intimating that defendant was in arrears in rent and that his marital relations were strained. There is nothing in the question or its context to support that contention.

■ During his argument to the jury the deputy district attorney referred to defense witness Soforenko, a physician, as "this Main street quack". Defense counsel interrupted as follows: "Just a moment. There is no evidence that he is a quack. I think that is pretty extreme language to be used against a professional gentleman, just because he comes here and testified." The deputy district attorney responded: "Ladies and gentlemen of the jury, I apologize.

. . . ''   There was no request by defendant that the jury be instructed to disregard the remark.

Other portions of the argument are now complained of as prejudicial misconduct, notwithstanding defendant's failure at the time to request an admonition by the court to the jury to disregard them.   A careful reading of the entire transcript, with particular attention to the points so urged, does not disclose misconduct by the district attorney which resulted in a miscarriage of justice.   It is only when from the course of conduct of a prosecuting officer it is apparent that the right of the defendant to a fair trial has been prejudicially invaded that the latter can successfully complain of it, and nothing of the kind appears here.   (*People* v. *Willard,* 150 Cal. 543 [89 Pac. 124]; *People* v. *Wolcott,* 137 Cal. App. 355 [30 Pac. (2d) 601].)

Rosenthal, who is an attorney admitted to practice in this state, took the stand and testified in his own behalf. On cross-examination he was questioned concerning his acts during the afternoon preceding the holdup, and stated that he knew his child was sick and that he had hurried home. He was then asked if he had not in fact been in an apartment with three other men and two women playing cards and having refreshments; and at 9 o'clock, with one of the men, took two guns and went out to commit the robbery. The questions asked concerning defendant's movements during the afternoon are complained of as not being properly within the scope of cross-examination.   The record does not support this view.   Defendant having taken the stand and having testified concerning his movements on the day in question, was clearly subject to cross-examination as to such movements and as to his companions at a time just prior to the commission of the offense.   (Pen. Code, sec. 1323; *People* v. *Teshara,* 141 Cal. 633 [75 Pac. 338].)

Appellant next contends that a special agent for the telephone company should not have been permitted to testify concerning certain long-distance calls.   He testified that the records showed that no calls were placed over the pay telephones of a certain drugstore near defendant's home to the residence of the witness Soforenko in Santa Monica on the day of the robbery.   Rosenthal testified that he thought he had gone to the drugstore to telephone but that he may have

gone to the oil station or garage, and that he was not positive where he went to call. Such testimony by the agent did not substantially contradict defendant's story at this point, and it does not appear that any prejudice could have resulted to him even if it be conceded that the foundation therefor was meager.

The next point urged is that the district attorney should not have been permitted to impeach the People's witness McIntyre, who was a prisoner in the county jail. At an earlier date this witness had made statements which if true supported the People's case, but also stated that he did not want to testify against the defendant. His reluctance to testify did not preclude the district attorney from calling him as a witness, but when he took the stand his testimony was at variance with his previous statements and was highly prejudicial to the People's case. The district attorney thereupon examined him as an adverse witness and offered testimony to impeach him, having first made a proper avowal of surprise. This procedure was proper under the provisions of the Civil Code, section 2049. The purpose of that section ''is to permit a party who has in good faith placed a witness upon the stand, with the distinct understanding that he will give testimony in support of his side of the issue, but instead of so doing, and to the surprise of the party presenting him as such witness, has given damaging testimony against said party, to show that prior to giving his testimony he made a statement which, if testified to, would be favorable to the party making him a witness''. (*People* v. *Spencer*, 58 Cal. App. 197, 225 [208 Pac. 380].)

The order of the trial court denying the motion for a new trial based on newly discovered evidence is assigned as error. In support of his motion defendant produced an affidavit setting out, among other matters, that the People's witness DuBoise, in a report to the police shortly after the robbery, had given a description of the perpetrators of the crime which varied from his testimony at the trial, and that neither description corresponded with the appearance of defendant. The only tendency of the newly discovered evidence was to contradict and impeach the testimony of the witness DuBoise, and ''it is well settled that such evidence neither warrants nor requires the granting of a new trial''.

(*People* v. *Ong Git*, 23 Cal. App. 148, 151 [137 Pac. 283, 284].)

Judgment and order affirmed.

Stephens, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1934.