[Crim. No. 1857. Third Dist. May 18, 1944.]

THE PEOPLE, Respondent, v. ROBERT SHUMAN, Appellant.

George E. Foote and E. R. Vaughn for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

PEEK, J.—Defendant herein was convicted of the crimes of kidnapping and robbery. From such judgment of conviction and from an order denying his motion for a new trial he now appeals to this court.

In 1940 the defendant was convicted of robbing a United States mailbox and was imprisoned at Terminal Island, Los Angeles, California. He was transferred to McNeil Island and later from that prison was sent to the Medical Center at Springfield, Missouri, an institution for mental prisoners. On March 10, 1942, defendant was returned to Sacramento from the Medical Center, being accompanied by a doctor and a deputy from the latter institution. Upon his arrival in Sacramento a sanity hearing was begun in the superior court. Defendant's mother interceded with the court in his behalf and ultimately secured his care and custody. On November 4, 1942, while still in the custody of his mother, an information containing seven counts was filed against him by the district attorney at Sacramento County. The first count charged the crime of kidnapping, while the second to seventh counts alleged separate charges of robbery.

At the time of his arraignment the trial judge expressed doubt as to his present sanity and appointed two qualified physicians to examine him for the purpose of determining his mental condition. A trial was had on such issue on December 2, 1942. The court found him to be insane at that time and he was committed to the Mendocino State Hospital, with orders that upon his becoming sane he be redelivered by the superintendent of said hospital to the sheriff of Sacramento County for trial for the crimes charged in the information. In accordance with such instructions the acting medical superintendent of the Mendocino State Hospital, on June 25, 1943, issued a certificate directed to the district attorney of Sacramento County, that in his opinion the defendant was sane, and certified to that fact in accordance with section 1372 of the Penal Code.

On July 6, 1943, the defendant appeared in court with counsel and entered a plea of "not guilty by reason of insanity" to each of the crimes alleged in the information, and the cause was set for trial on the sole issue thus raised.

Upon the conclusion of the trial the jury found the defendant sane at the time of the commission of each offense charged in the seven counts. The court adjudged the degree of the robbery set forth in counts 2 to 7 inclusive, to be robbery of the second degree, and further found that no bodily harm or injury was inflicted upon the victim of the kidnapping. A motion by defendant for a new trial was denied, and he thereupon was sentenced for the crime of kidnapping to San Quentin Prison for life, with possibility of parole. For each of the other six counts he was sentenced to be imprisoned at San Quentin in accordance with law, the terms of such imprisonment to run concurrently with each other and concurrently with the term of imprisonment under count 1.

From said order and judgment denying his motion for a new trial the defendant appeals upon the grounds of (1) admission of incompetent and harmful evidence over the objection of appellant's counsel and insufficiency of the evidence to sustain the verdict; (2) erroneous and harmful instructions by the court, and (3) misconduct of the district attorney in the argument to the jury.

In regard to defendant's first contention it is argued that the testimony of one of the alienists appointed by the court was not based upon facts but was based upon hearsay and upon his personal examination of the defendant after he "had recovered or had largely recovered" from his mental illness.

It is further charged that other evidence by the same witness was admitted without a proper foundation for the same having been laid. However, it is not contended, nor does the record so disclose, that the alleged erroneous testimony was the only evidence before the jury upon such issue. Assuming, but not so deciding, that the challenged evidence was inadmissible, nevertheless this court can not presume that injury resulted therefrom. (Const., art. VI, § 4½; *Arnett* v. *Nall*, 51 Cal.App. 194 [196 P. 291].) It is not sufficient for the defendant merely to allege error in the abstract (*Mintzer* v. *City of Richmond*, 27 Cal.App. 566 [150 P. 799]) but it is incumbent upon him to show that the alleged error was sufficiently prejudicial to require a reversal. (*Coleman* v. *Far-*

*well*, 206 Cal. 740 [276 P. 335].) In the present case no attempt has been made at such a showing. The defendant merely has quoted certain abridged portions of the testimony and from such abstract statement he then concludes that such testimony was objectionable as above stated without a showing wherein the same was prejudicial. Under the rule herein enunciated the defendant therefore has not sustained the burden of showing prejudicial error.

Defendant's second objection is directed against two instructions which were included in the court's original charge to the jury, and which, after some deliberation on the part of the jury, were again read to the members thereof by the court in response to their request to be informed if they were to be (1) "interested in acting only on the character of this defendant" on the dates of the alleged crimes; (2) "his being abnormal: Is that a form of insanity?", and (3) did the fact of his "having been in an institution . . . have any bearing on the case . . . ?" In response to such request the court reread the following two instructions:

"That insanity may be available as a defense to a crime charged, it must appear that the defendant, when the acts were committed, was so deranged and diseased mentally that he was not conscious of the wrongful nature of the act committed. If he has at that time reasoning capacity sufficient to distinguish between right and wrong as to the particular act he is doing, knowledge and consciousness that what he is doing is wrong and criminal and will subject him to punishment, he must be held responsible for his conduct. Although he may be laboring under partial insanity,—as, for instance, suffering from some insane delusion or hallucination,—still if he understands the nature and character of his action and its consequences,—if he has knowledge that it is wrong and criminal, and that if he does the acts he will do wrong, such partial insanity or the existence of such delusion or hallucination is not sufficient to relieve him from responsibility for his criminal acts."

"A judgment, entered before trial, committing the defendant to a State Hospital for the care and treatment of the insane is not final and conclusive upon the question of his criminal responsibility; and where the insanity of said defendant is not permanent or habitual no presumption can be indulged that such insanity had an existence at the time of the commission of the crime."

Defendant dismisses his contention in regard to the first challenged instruction with the observation that although it is a correct statement of the law and is quoted from *People* v. *Willard*,. 150 Cal. 543, 544 [89 P. 124], it is improper in form and is argumentative. No authority is cited by defendant for such statement. A cursory examination discloses the quoted portion of the Willard case to have been cited with approval in succeeding cases. (See *People* v. *Troche*, 206 Cal. 35 [273 P. 767], and cases cited therein.) Even assuming, but solely for the purpose of a discussion of the question so raised, that defendant's objections to the instruction given are well founded, nevertheless this court would be compelled to hold such contentions untenable in that defendant has failed completely to show in any way whatsoever that the error of which he complains has resulted in a miscarriage of justice. (*Coleman* v. *Farwell*, *supra;* *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 554 [147 P. 238].)

The defendant likewise dismisses his attack upon the second instruction with a similar statement that it is "argumentative, comments on the evidence and invades the province of the jury," and that it is further erroneous in that it "assumed something not proved, that the insanity of the defendant was not permanent or habitual." Again, no authority in support of such statement is given by defendant. The instruction so challenged is taken directly from the opinion of the court in the case of *People* v. *Gilberg*, 197 Cal. 306, 320 [240 P. 1000]. The court therein cites the cases of *People* v. *Willard*, *supra*, and *In re Buchanan*, 129 Cal. 330 [61 P. 1120, 50 L.R.A. 378], wherein the same rule was announced. The apparent basis for this argument of defendant is an inference in certain instructions which he proposed and which were properly refused by the trial court, that he, once having been committed to the mental institution, though subsequently discharged therefrom, still remained under the disabilities which caused his original confinement. However, our attention has been directed to no issue raised by defendant either during the course of the trial or in this appeal in relation to habitual or permanent insanity as distinguished from temporary insanity. A comparable situation to that herein presented is found in the case of *People* v. *Keyes*, 178 Cal. 794, 801 [175 P. 6], where the court, in passing upon a question raised by the defendant therein, alleging error on the part of the trial court in refusing certain instructions, among which

was one stating in effect that if insanity was found to exist prior to the commission of the crime charged there arises a presumption that such insanity continues, and the burden is upon the state to show otherwise, stated: "no presumption of its continuance can be indulged in from proof of its prior existence."

Lastly, defendant insists that the deputy district attorney who prosecuted the case was guilty of misconduct in his argument to the jury when he referred to the simulated insanity of the defendant while seated at the counsel table during the course of the trial. In support of such argument he cites the case of *People* v. *Meyer*, 118 Cal.App. 231 [4 P.2d 958]. In the case last cited the district attorney not alone commented upon the appearance of the defendant, but also stated on his personal authority that the defendant was guilty. This court rightfully observed that such conduct was indiscreet, inexcusable and highly prejudicial. However, it is to be observed that no comparable statements are found in the record before us. The case of *People* v. *Cornell*, 203 Cal. 144 [263 P. 216], comes more nearly being in point. There a plea of not guilty by reason of insanity was also at issue. On appeal the defendant raised certain questions in relation to remarks made by the prosecutor in regard to the actions and demeanor of the defendant while in court and in the presence of the jury. The court, in passing upon the issues so raised, stated:

"If a defendant being thus brought as of right into the presence of the court and jury so conducts himself as to be suspected of simulation, we can perceive no reason why those who may have observed his actions and conduct elsewhere may not be heard to describe his normal appearance and actions for the purpose of exposing his deception. . . . In the instant case the inferences which the prosecution sought to present to the jury were strictly within the scope of the evidence which had been introduced before it relating to the defendant's actions and demeanor in and away from the presence of the jury. In so arguing the district attorney was clearly within his line of duty."

For the foregoing reasons the judgment and order appealed from are affirmed.

Adams, P. J., and Thompson, J., concurred.