[Crim. No. 565. Fourth Dist. May 23, 1945.]

THE PEOPLE, Respondent, v. GEORGE HENRY CROWDER, Appellant.

Henry Schmidt, Dorris & Fleharty and R. W. Henderson for Appellant.

Robert W. Kenny, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

GRIFFIN, J.—In December, 1931, defendant and appellant was charged with murdering his mother on January 14, 1931. At the time of the arraignment in the superior court he appeared without counsel. He refused to allow the judge to appoint counsel to represent him. He entered a plea of guilty, as charged. Thereupon the court, on its own motion, appointed counsel to represent him, and set December 31, 1931, as the time for hearing a motion made by his counsel to withdraw the former plea of guilty and enter a plea of not guilty, or *"for hearing any other motion to be made."* There-

after, the court granted the motion. The plea of guilty was withdrawn and defendant entered a plea of not guilty and not guilty by reason of insanity. No other motions were made or suggested in reference to the sufficiency of the evidence at the preliminary hearing or the fact that he was not there represented by counsel.

At the suggestion of the trial judge, three physicians were appointed to examine defendant as to his present sanity. Upon the return of a report that he was then insane, a trial was had on that issue before a jury, under the provisions of section 1368 of the Penal Code. It found him to be insane and he was committed to the Mendocino State Hospital until he regained his sanity and all proceedings on the information were suspended until that time.

On November 13, 1944, it was claimed that defendant had regained his sanity. He was returned for trial on the information. He then, through his counsel, made a motion to withdraw his pleas and to set aside the information on the ground that at the time of the preliminary hearing the defendant was insane and therefore not competent to be a witness, and that he was not represented by counsel. This motion was denied. After trial, the jury found him guilty of manslaughter. By the same jury he was tried on his plea of not guilty by reason of insanity. It was found that he was sane at the time he committed the offense. Motions for arrest of judgment and for new trial were denied. Judgment was pronounced. The appeal is from the judgment which is attacked upon three grounds: (1) Insufficiency of the evidence; (2) Refusal of the court to dismiss the information upon the ground that at the time defendant was subjected to the preliminary examination he was insane and was not represented by counsel; (3) that the provisions of sections 1016, 1017 and 1026 of the Penal Code relating to the several pleas and trials thereon, where the defense of insanity is interposed, deprive the accused of his liberty without due process of law and are in violation of section 1 of Amendment XIV to the Constitution of the United States.

■ Defendant confines his principal attack to the question of the sufficiency of the evidence relating to his sanity. He admits a conflict in the evidence on that subject but argues that "the testimony of the defendant's sanity is so insubstantial in comparison with the testimony that he was insane,

that to accept it does violence to any rational standard of human judgment.''

Defendant was born in Oklahoma in 1908. His brother is two years younger. They lived with their parents until 1925, when the parents were divorced. Thereafter, the boys lived with their mother. In 1930 they bought a home near Bakersfield. On the morning of January 14, 1931, at about 8:30 or 9 o'clock, two telephone workmen called at the Crowder home to reconnect a phone. They were told by the boys that ''I don't think we want the telephone now.'' The phone men then went into the house to remove the instrument and started to open the front-room door. One of the boys shut the front-room door and directed the workmen to the dining room where the phone was located. The defendant's shirt was badly torn. The workmen left.

A few minutes later that morning, defendant's brother went to a neighbors' house and told them that his mother was dead. They immediately went to the house and found her sitting in the middle of the room in a big arm-chair, dead. There was a bullet wound in her right temple and blood had been streaming down her cheek. She was fully dressed and had a gun in her hand which had been purchased a couple of weeks before for the boys. The bullet entered the right side of the head slightly above the ear. There did not appear to be any powder marks on the face or temple. After their mother was killed, defendant and his brother went to live at the neighbors' for about a month. They later moved to the mountains. While at the neighbors they were very nervous. They did not go out to the cemetery where their mother was buried. The officers investigated the mother's death for some time. On December 19, 1931, defendant was apprehended. The officers testified that he was then rational. Defendant confessed to the killing of his mother to the officer, who wrote out the confession and defendant signed it.

The substance of the confession is that defendant and his brother had a fight, after which his brother went to bed; that defendant decided to ''fix him'' and so he ''went and got the gun intending to pistol-whip'' his brother; that as he got the gun his mother came into the room and tried to reason with him; that he shoved her into a chair; that when she screamed he went ''haywire'' and he then put the gun up to her head and fired; that he saw that he had not awakened his brother so he put the gun in her hand and went to bed.

Both defendant and his brother were present at the conversation in reference to the confession. On the same day defendant was questioned by the assistant district attorney and he again admitted the killing. That confession was reported by a court reporter and defendant signed it. The details of that statement were about the same as related in the first confession.

On December 22, 1931, at the time of the preliminary examination, defendant was duly arraigned and was informed of his rights, which included his right to counsel at all stages of the proceeding. He elected to proceed without counsel, took the stand and personally testified that he had shot his mother and repeated in more detail the circumstances above related. He was held to answer on the charge of murder. Upon filing the information, proceedings were had as heretofore related.

The testimony as to the mental condition of the defendant at the trial may be thus summarized: There is expert opinion evidence that the defendant was *sane* and knew the difference between right and wrong and was able to appreciate the effect and consequence of his actions at the time he made the confessions and at the time of the killing. In addition to this, there is the opinion of more than half a dozen lay witnesses that the defendant was rational and sane at those times. It is true that the defendant was adjudged insane approximately a month and a half after the making of the confessions and a little over a year after the commission of the offense. There is also expert testimony as well as lay opinions that he was *insane* at the time the confessions were made as well as at the time the alleged offense was committed.

At the time of trial on the plea of not guilty, defendant's counsel raised the question of the sanity of defendant when he made the several confessions above mentioned as well as his confession made under oath at the preliminary examination. Considerable evidence, both lay and expert, was offered by both parties on this subject. It was later stipulated that all evidence on the question of defendant's sanity which was given at that hearing might be thereafter considered by the same jury in connection with the plea of not guilty by reason of insanity, in case such a trial proved necessary.

Dr. Rowe, superintendent of the Mendocino State Hospital where defendant was confined, after reciting his general and special qualifications relating to mental diseases, testified that in his opinion the diagnosis given by the officers at the time of his first insanity hearing was erroneous; that in his opin-

ion, at the time of the killing and at the time of the making of the confessions, the defendant was of a psychopathic personality with episodal psychosis, i. e., the constitutional make-up of the man; that he had psychotic periods; that that in itself is not any recognized or known form of insanity; that the diagnosis of simple type dementia praecox, given by other medical witnesses for defendant, was erroneous because that form of insanity is very seldom cured; that its principal concept is a progressive deterioration; that defendant is not now so afflicted and that their theory or diagnosis was not correct at any time.

The question of defendant's insanity, both at the time of making the confessions and at the time of the killing, was thoroughly presented to the same jury. They rejected both of defendant's contentions in this respect. There was substantial evidence supporting the finding of the jury on those issues. Whether the accused was, at the time he committed the act or made the confessions referred to, legally responsible, as responsibility is defined by the law, was a question of fact entirely within the province of the jury. That finding will not be disturbed by this court on appeal.

The fact that the jury might have been justified, under the evidence, in rendering a different verdict is of no consequence. (*People* v. *Schuler,* 87 Cal.App. 68, 75 [261 P. 1059] ; *People* v. *Kirby,* 15 Cal.App. 264, 272 [114 P. 794] ; *People* v. *Dugger,* 5 Cal.2d 337, 341 [54 P.2d 707] ; *People* v. *Lizarraga,* 108 Cal. App. 152, 155 [291 P. 434]; *People* v. *Plyler,* 126 Cal. 379, 382 [58 P. 904] ; *People* v. *Willard,* 150 Cal. 543 [89 P. 124] ; *People* v. *Babcock,* 57 Cal.App.2d 54, 55 [134 P.2d 54].)

█ The second point raised involves the question whether the court erred in denying defendant's motion to set aside the pleas for the second time and to test the question whether defendant was insane at the time he testified before the committing magistrate and to now object because he was not then represented by counsel. We do not see how defendant can claim that he has been prejudiced by this ruling. Defendant objected to the admission of his confessions into evidence. The entire question of his insanity at the time of making the confessions was then presented to the jury. The motion was not presented at the first opportunity presented when counsel was first appointed to represent him. The trial court then permitted defendant to make a motion to set aside his plea of guilty and to make any other motion he desired. Defendant

did not make such a motion at that time. Furthermore, from the record, it appears that at the preliminary examination defendant was fully informed of his rights as well as his right "to counsel at all stages of the proceedings." The defendant does not dispute this fact. He expressed his willingness to proceed and to testify. Considering all of these facts, the trial court was justified in denying the motion. The exercise of the power to allow a plea to be withdrawn for the purposes indicated is left to the sound discretion of the trial judge. (*People* v. *Linton,* 102 Cal.App. 608, 611 [283 P. 389].)

Defendant makes no claim of abuse of discretion nor has he made any showing of prejudice to him by reason of the fact that the court did not allow him to withdraw his plea for the second time for the purposes indicated. No abuse of discretion resulted. (*People* v. *Miller,* 123 Cal.App. 499 [11 P.2d 884]; *People* v. *Creeks,* 170 Cal. 368, 371 [149 P. 821]; *People* v. *Serrano,* 123 Cal.App. 339 [11 P.2d 81]; *Morehouse* v. *Superior Court,* 124 Cal.App. 38, 39 [12 P.2d 133]; *People* v. *Campos,* 10 Cal.App.2d 310, 320 [52 P.2d 251]; *People* v. *Best,* 13 Cal.App.2d 606, 611 [57 P.2d 168]; *People* v. *Dutton,* 27 Cal.App.2d 364, 365 [80 P.2d 1003].)

■ The third point involves the constitutionality of sections 1016, 1017 and 1026 of the Penal Code. Counsel for defendant has admitted that the Supreme Court of this state has, on many occasions, already upheld the constitutionality of these sections against such an attack, but now asks this court to reconsider those decisions. We need but cite the decision prepared by Mr. Justice Shenk, in *People* v. *Coleman,* 20 Cal.2d 399, 405 [126 P.2d 349], in which he says: "The foregoing contentions are not new. They were made in other cases determined after the amendment of sections 1016 and 1020 of the Penal Code and the enactment of section 1026 of the same code all in 1927. . . . They were declared to be valid in 1928 . . . and have been upheld in a line of unvarying decisions for the last thirteen years and more (citing cases)."

The constitutionality of these sections as applied to the facts here presented has been fully determined.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 21, 1945. Carter, J., voted for a hearing.